IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TRIBUNE PUBLISHING COMPANY, LLC and THE BALTIMORE SUN COMPANY, LLC, | ) ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) ) |
| ACE AMERICAN INSURANCE COMPANY, | ) ) ) |
| Defendant. | ) |

## COMPLAINT

Tribune Publishing Company, LLC ("Tribune Publishing") and The Baltimore Sun Company, LLC ("Baltimore Sun") (collectively, "Plaintiffs"), through their undersigned counsel, Reed Smith LLP, seek damages for breach of contract and vexatious and unreasonable conduct by ACE American Insurance Company ("ACE") under certain insurance policies issued by ACE and insuring Tribune Publishing and Baltimore Sun. In support of its Complaint, Plaintiffs state as follows:

## NATURE OF THE ACTION

1. This is an insurance coverage dispute that arises out of a shooting that occurred on June 28, 2018 (the "Occurrence") at an office space that Baltimore Sun leased in Annapolis, Maryland. As a result of that Occurrence, various individuals filed two lawsuits in Maryland state court (the "Underlying Lawsuits") seeking damages from Tribune Publishing and Baltimore Sun, as well as from the owner of the building, Bestgate Corporate Center, LLC ("Bestgate"), and the leasing company, St. John Properties, Inc. ("St. John").

2. By this Complaint, Plaintiffs assert claims for breach of contract and declaratory judgment against ACE concerning their rights and ACE's obligations under a Commercial General Liability policy that ACE issued to Plaintiffs, Policy No. HDOG27869701, effective August 4,

2017 to August 4, 2018 (the "CGL Policy"), and a Workers Compensation/Employers Liability policy that ACE issued to Plaintiffs, Policy No. C64416078, effective August 4, 2017 to August 4, 2018 (the "WC/EL Policy"). Plaintiffs also assert a claim under Section 155 of the Illinois Insurance Code due to ACE's vexatious and unreasonable conduct.

3. Plaintiffs seek an award against ACE of actual damages, consequential damages, prejudgment interest, statutory penalties, and all attorneys' fees that Plaintiffs incur in connection with this action.

## THE PARTIES, JURISDICTION, AND VENUE

4. Plaintiff Tribune Publishing Company, LLC is a Delaware limited liability company, and its sole member is Tribune Publishing Company. Tribune Publishing Company is a Delaware corporation with its principal place of business in Chicago, Illinois.

5. Plaintiff The Baltimore Sun Company, LLC is a Delaware limited liability company, and its sole member is Tribune Publishing Company, LLC.

6. On information and belief, Defendant ACE American Insurance Company is a Pennsylvania corporation with its principal place of business in Philadelphia, Pennsylvania.

7. The amount in controversy exceeds $75,000.00, exclusive of interest and costs.

8. This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1) because this action is by and between citizens of different states, and the amount in controversy is in excess of the jurisdictional minimum.

9. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) because Defendant ACE American Insurance Company is a resident of this District pursuant to 28 U.S.C. § 1391(c)(2), as it conducts a significant amount of business in this District and is therefore subject to this Court's personal jurisdiction. Additionally, venue is proper in this District under 28 U.S.C.

§ 1391(b)(2) because a substantial portion of the events giving rise to this action occurred in this District, as the CGL Policy and WC/EL Policy were issued to a Named Insured in this District.

## FACTUAL BACKGROUND

### The Underlying Lawsuits

10. On June 28, 2018, Jarrod Ramos ("Ramos") shot his way into office space that Baltimore Sun leased from St. John in a building owned by Bestgate located at 888 Bestgate Road, Annapolis, Maryland 21401. Ramos began shooting at employees of Baltimore Sun and Tribune Publishing, killing five employees and injuring others (defined above as the "Occurrence").

11. On June 24, 2021, two lawsuits were filed in the Circuit Court for Anne Arundel County, Maryland on behalf of ten plaintiffs seeking damages from Baltimore Sun, Tribune Publishing, Bestgate, and St. John. The lawsuits are captioned *Andrea Chamblee, et al. v. The Baltimore Sun Company, et al.* and *Beth Rittenour, et al. v. Bestgate Corporate Center, LLC, et al.*, Consolidated Case No. C-02-CV-21-000820 (defined above as the "Underlying Lawsuits"). The Underlying Lawsuits assert claims for wrongful death, survival, and negligence based on premises liability.

### The ACE Insurance Policies

12. ACE issued a commercial general liability insurance policy to Plaintiffs, Policy No. HDOG27869701, effective August 4, 2017 to August 4, 2018 (defined above as the "CGL Policy"). Baltimore Sun and Tribune Publishing are insureds under the CGL Policy. A true and correct copy of the CGL Policy is attached hereto as **Exhibit A**.

13. Pursuant to Insuring Agreement of Coverage A in the CGL Policy, ACE agreed to "pay those sums the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage'" that "is caused by an occurrence."

14. Insuring Agreement of Coverage A also provides that ACE "will have the right and duty to defend the insured against any 'suit' seeking those damages."

15. The CGL Policy has a per-occurrence limit of $1,000,000, and a matching per-occurrence deductible of $1,000,000. Endorsement 27 to the CGL Policy, the Allocated Loss Adjustment Expense ("ALAE") Endorsement, requires Plaintiffs to reimburse the $1,000,000 deductible amount for any defense costs and damages under Coverage A. Payment of defense costs erodes not only the CGL Policy deductible, but also the CGL Policy limits of liability.

16. ACE also issued a Workers Compensation and Employers Liability insurance policy to Plaintiffs, Policy No. C64416078, effective August 4, 2017 to August 4, 2018 (defined above as the "WC/EL Policy"). Baltimore Sun and Tribune Publishing are insureds under the WC/EL Policy. A true and correct copy of the WC/EL Policy is attached hereto as **Exhibit B**.

17. The WC/EL Policy consists of two coverage parts, a workers compensation ("WC") coverage part and an employers liability ("EL") coverage part. The WC coverage part "applies to bodily injury," including resulting death, "by accident or … disease," and obligates ACE to "pay promptly when due the benefits required of [Plaintiffs] by the workers compensation law." The EL coverage part "applies to bodily injury," including resulting death, "by accident or … disease," and obligates ACE to "pay all sums that [Plaintiffs] legally must pay as damages because of bodily injury to [Plaintiffs'] employees."

18. The WC coverage part provides that ACE has "the right and duty to defend at our expense any claim, proceeding or suit against you for benefits payable by this insurance." Likewise, the EL coverage part provides that ACE has "the right and duty to defend at our expense any claim, proceeding or suit against you for benefits payable by this insurance."

19. The WC and EL coverage parts have a shared deductible of $1,000,000 per incident. Payments by Plaintiffs of workers compensation claims and payments of defense costs erode this shared deductible.

20. There is no cap or limit on ACE's obligation to provide coverage for defense expenses under the EL coverage part.

### ACE's Failure and Refusal to Provide Defense Coverage

21. When Plaintiffs initially informed ACE of the Occurrence on June 29, 2018, ACE sent Plaintiffs a letter dated July 11, 2018 advising that it was closing its file under the CGL Policy because the CGL Policy is a "no-risk transfer policy," *i.e.*, a policy with $1,000,000 in coverage limits and a matching $1,000,000 deductible. A true and correct copy of ACE's July 11, 2018 letter is attached hereto as **Exhibit C**.

22. Plaintiffs tendered the Underlying Lawsuits to ACE in April 2021. ACE did not make any timely response to the tender.

23. In September 22, 2021, ACE for the first time substantively addressed its coverage obligations under the WC/EL Policy, which, unlike the CGL Policy, provides actual risk transfer and duty to defend coverage to Plaintiffs. ACE agreed to provide a defense to Baltimore Sun for the Underlying Lawsuits under the EL coverage part of the WC/EL Policy, but denied coverage, including a duty to defend, with respect to Tribune Publishing. ACE did not at this time respond or provide any coverage position with respect to its CGL Policy concerning the Underlying Lawsuits. A true and correct copy of ACE's September 22, 2021 letter is attached hereto as **Exhibit D**.

24. On January 28, 2022, ACE reversed course and accepted its duty to defend both Baltimore Sun and Tribune Publishing under the EL coverage part of the WC/EL Policy. A true

and correct copy of ACE's January 28, 2022 letter regarding the WC/EL Policy is attached hereto as **Exhibit E**. For the first time, ACE also purported to accept coverage under the CGL Policy under a reservation of rights. A true and correct copy of ACE's January 28, 2022 letter regarding the CGL Policy is attached hereto as **Exhibit F**.

25. On February 18, 2022, in a letter supplementing its January 28, 2022 correspondence, ACE took the position that some portion of Plaintiffs' defense costs must be "allocated" to the CGL Policy, a position that benefits ACE to the detriment of Plaintiffs. Given that the CGL Policy does not provide any actual defense costs coverage to Plaintiffs, any allocation of defense costs to the CGL Policy improperly would reduce the amount of defense costs for which ACE must provide coverage under the WC/EL Policy. Despite asserting that defense costs must be allocated to the CGL Policy, ACE simultaneously took the position that the amount of defense costs incurred by Plaintiffs was insufficient to exhaust the deductible and policy limits of the CGL Policy. A true and correct copy of ACE's February 18, 2022 letter is attached hereto as **Exhibit G**.

26. On May 23, 2022, Plaintiffs objected to ACE's assertion of a right to allocate defense costs to the CGL Policy, which amounts to an inappropriate and legally impermissible attempt by ACE to subrogate against its own insureds. A true and correct copy of Plaintiffs' May 23, 2022 letter is attached hereto as **Exhibit H**. ACE nevertheless has persisted in its demand for "allocation" of defense costs to the CGL Policy.

27. Plaintiffs have fully satisfied the $1,000,000 shared deductible for the WC and EL coverage parts under the WC/EL Policy.

28. Plaintiffs have tendered substantial amounts of defense costs and supporting invoices to ACE and demanded full payment of same. In breach of its obligations under the WC/EL Policy, ACE has failed and refused to make any payment of any of these defense costs.

29. Additionally, ACE improperly and in bad faith has raised objections to Plaintiffs' selection of defense counsel and the rates of defense counsel. ACE also improperly and in bad faith has tried to impose its "Litigation Guidelines" on defense counsel in connection with their defense of the Underlying Lawsuits. All of this conduct is inappropriate because ACE's reservations of rights as to its duty to defend raise a conflict of interest entitling Plaintiffs to be represented by independent counsel, control their own defense, and have ACE pay for that defense.

30. Plaintiffs have substantially satisfied all policy conditions imposed on them under the WC/EL Policy. Alternatively, the performance of such conditions has been excused as a matter of law or by ACE's conduct, and/or ACE otherwise is estopped from asserting any non-compliance with any such conditions.

## COUNT I
### (Breach of Contract)

31. The allegations of paragraphs 1 to 30 are incorporated by reference as if set forth fully herein.

32. ACE acknowledged that both Plaintiffs are entitled to defense coverage in connection with the Underlying Lawsuits under the EL coverage part of the WC/EL Policy.

33. Despite ACE's acknowledgement that Plaintiffs are entitled to defense coverage under the WC/EL Policy, ACE has failed and refused to pay or reimburse any of Plaintiffs' defense costs.

34. ACE's failure and refusal to fulfill its defense obligations constitutes a breach of ACE's duty to defend under the WC/EL Policy.

WHEREFORE, Plaintiffs respectfully request that this Court enter a judgment in their favor, determining and declaring that ACE breached the WC/EL Policy by failing and refusing to pay or reimburse Plaintiffs' defense costs incurred in the Underlying Lawsuits, and ordering ACE to reimburse the full amount of Plaintiffs' defense costs.

## COUNT II
**(Declaratory Judgment – ACE Is Not Entitled to Allocate Defense Costs to the CGL Policy)**

35. The allegations of paragraphs 1 to 34 are incorporated by reference as if set forth fully herein.

36. Plaintiffs seek a declaration, pursuant to 28 U.S.C. § 2201, that ACE is not entitled to allocate defense costs to the CGL Policy because ACE is barred from doing so based on its failure to timely respond under the CGL Policy to Plaintiffs' tender of the Underlying Lawsuits; because ACE is estopped from shifting its defense obligations under the WC/EL Policy to the CGL Policy; and because doing so is an impermissible attempt to subrogate against its own insureds, Plaintiffs.

37. ACE is further estopped from raising other defenses to its duties to defend or indemnify Plaintiffs such as late notice.

38. An actual and justiciable controversy exists between Plaintiffs and ACE with respect to whether ACE is entitled to allocation of defense costs to the CGL Policy.

39. A declaration of the parties' rights and obligations under the CGL Policy will serve to resolve the dispute between them.

WHEREFORE, Plaintiffs respectfully request that this Court enter a judgment in their favor, determining and declaring that ACE is not entitled to allocate any defense costs incurred by Plaintiffs in the Underlying Lawsuits to the CGL Policy and is further estopped from raising other defenses to its duties to defend or indemnify Plaintiffs such as late notice.

## COUNT III
### (Violation of Illinois Insurance Code Section 155)

40. The allegations of paragraphs 1 to 38 are incorporated by reference as if set forth fully herein.

41. Section 155 of the Illinois Insurance Code, 215 ILCS 5/155, provides an extra-contractual remedy to policyholders where an insurer's conduct is vexatious and unreasonable. In determining whether an insurer's conduct is vexatious and unreasonable, courts consider the totality of the circumstances, including the insurer's attitude, whether the insured was forced to sue to recover, and whether the insurer interpreted its policy in an unreasonable manner, among other things.

42. Where an insured demonstrates that an insurer's conduct was vexatious and unreasonable, the court may award reasonable attorneys' fees, other costs, and an amount not to exceed: (1) 60% of the amount that the insured is entitled to recover on its claim, exclusive of costs; (2) $60,000; or (3) the excess of the amount that the insured is entitled to recover, exclusive of costs, over the amount, if any, that the insurer offered to pay in settlement of the claim prior to the action.

43. ACE has engaged in vexatious and unreasonable conduct in violation of Section 155 of the Illinois Insurance Code.

44. ACE acted vexatiously and unreasonably by failing to timely respond to Plaintiffs' tender of the Underlying Lawsuits, initially incorrectly denying coverage for Tribune Publishing, and subsequently by failing and refusing to pay or reimburse Plaintiffs' defense costs incurred in connection with the Underlying Lawsuits under the WC/EL Policy.

45. ACE acted vexatiously and unreasonably by demanding "allocation" of defense costs to the CGL Policy, which is an improper attempt to subrogate against its own insureds.

46. ACE acted vexatiously and unreasonably by raising objections to Plaintiffs' selection of defense counsel even though Plaintiffs are entitled to select independent counsel due to a conflict of interest created by ACE's reservations of rights.

47. ACE acted vexatiously and unreasonably by raising objections to the rates of Plaintiffs' defense counsel even though Plaintiffs are entitled to select independent counsel due to a conflict of interest created by ACE's reservations of rights, and ACE is obligated to pay the reasonable fees and expenses of such independent counsel.

48. ACE acted vexatiously and unreasonably by trying to impose "Litigation Guidelines" on Plaintiffs' defense counsel even though Plaintiffs are entitled to select independent counsel due to a conflict of interest created by ACE's reservations of rights, and independent counsel are not only allowed, but obligated, to exercise their own professional judgment in defending Plaintiffs.

WHEREFORE, Plaintiffs respectfully request that this Court enter a judgment in their favor under Section 155 of the Illinois Insurance Code, determining and declaring that ACE acted vexatiously and unreasonably in violation of the Code, and ordering ACE to compensate Plaintiffs for their reasonable attorneys' fees incurred in this action and pay to Plaintiffs a statutory penalty of $60,000.

## JURY TRIAL DEMAND

Plaintiffs Tribune Publishing Company, LLC and The Baltimore Sun Company, LLC demand a trial by jury for all issues triable by jury.

Dated: December 29, 2022                         Respectfully submitted,


By: /s/ John D. Shugrue
John D. Shugrue
John S. Vishneski III
J. Andrew Moss

                Andrew M. Barrios
                REED SMITH LLP
                10 South Wacker Drive, Suite 4000
                Chicago, IL 60606-7507
                Telephone: +1 312 207 1000
                Facsimile: +1 312 207 6400
                Email:    jshugrue@reedsmith.com
                            jvishneski@reedsmith.com
                            amoss@reedsmith.com
                            abarrios@reedsmith.com