**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| TRIBUNE PUBLISHING COMPANY, LLC ) and THE BALTIMORE SUN COMPANY, ) LLC, ) ) Plaintiffs, ) ) v. ) ) ACE AMERICAN INSURANCE COMPANY, ) ) Defendant. ) | Case No. 22-cv-07327 |

**DEFENDANT ACE AMERICAN INSURANCE COMPANY'S
ANSWER TO PLAINTIFFS' FIRST AMENDED COMPLAINT, AFFIRMATIVE
DEFENSES AND COUNTERCLAIM FOR DECLARATORY JUDGMENT**

**ACE AMERICAN INSURANCE COMPANY'S ANSWER**

ACE American Insurance Company (ACE"), through its undersigned counsel, Hinkhouse Williams Walsh LLP, as its Answer to the Plaintiffs' First Amended Complaint, denies Plaintiffs' statements in its introductory paragraph, and further states as follows:

1.      This is an insurance coverage dispute that arises out of a shooting that occurred on June 28, 2018 (the "Occurrence") at an office space that Baltimore Sun leased in Annapolis, Maryland.  As a result of that Occurrence, various individuals filed two lawsuits in Maryland state court (the "Underlying Lawsuits") seeking damages from Tribune Publishing and Baltimore Sun, as well as from the owner of the building, Bestgate Corporate Center, LLC ("Bestgate"), and the leasing company, St. John Properties, Inc. ("St. John").

ANSWER:      ACE admits the allegations in paragraph 1.

2.      By this Complaint, Plaintiffs assert claims for breach of contract and declaratory judgment against ACE concerning their rights and ACE's obligations under a Commercial General Liability policy that ACE issued to Plaintiffs, Policy No. HDOG27869701, effective August 4,

2017 to August 4, 2018 (the "CGL Policy"), and a Workers Compensation/Employers Liability policy that ACE issued to Plaintiffs, Policy No. C64416078, effective August 4, 2017, to August 4, 2018 (the "WC/EL Policy"). Plaintiffs also assert a claim under Section 155 of the Illinois Insurance Code due to ACE's vexatious and unreasonable conduct.

ANSWER:    ACE admits only that Plaintiffs assert the claims alleged in paragraph 2 but denies that Plaintiffs' claims have merit and denies all remaining allegations.

3.    Plaintiffs seek an award against ACE of actual damages, consequential damages, prejudgment interest, statutory penalties, and all attorneys' fees that Plaintiffs incur in connection with this action.

ANSWER:    ACE admits that Plaintiffs seek the relief alleged in paragraph 3 but denies that Plaintiffs' claims have merit and further denies that Plaintiffs are entitled to the relief they seek.

4.    Plaintiff Tribune Publishing Company, LLC is a Delaware limited liability company, and its sole member is Tribune Publishing Company. Tribune Publishing Company is a Delaware corporation with its principal place of business in Chicago, Illinois.

ANSWER:    On information and belief, ACE admits the allegations in paragraph 4.

5.    Plaintiff The Baltimore Sun Company, LLC is a Delaware limited liability company, and its sole member is Tribune Publishing Company, LLC.

ANSWER:    On information and belief, ACE admits the allegations in paragraph 5.

6.    On information and belief, Defendant ACE American Insurance Company is a Pennsylvania corporation with its principal place of business in Philadelphia, Pennsylvania.

ANSWER:    ACE admits the allegations in paragraph 6.

7.    The amount in controversy exceeds $75,000.00, exclusive of interest and costs.

ANSWER:    ACE admits the allegations in paragraph 7.

8.    This Court has original jurisdiction over this matter pursuant to 28 U.S.C.

§ 1332(a)(1) because this action is by and between citizens of different states, and the amount in controversy is in excess of the jurisdictional minimum.

ANSWER:    ACE admits the allegations in paragraph 8.

9.    Venue is proper in this District under 28 U.S.C. § 1391(b)(1) because Defendant ACE American Insurance Company is a resident of this District pursuant to 28 U.S.C.§ 1391(c)(2), as it conducts a significant amount of business in this District and is therefore subject to this Court's personal jurisdiction. Additionally, venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial portion of the events giving rise to this action occurred in this District, as the CGL Policy and WC/EL Policy were issued to a Named Insured in this District.

ANSWER:    ACE admits the allegations in paragraph 9.

10.    On June 28, 2018, Jarrod Ramos ("Ramos") shot his way into office space that Baltimore Sun leased from St. John in a building owned by Bestgate located at 888 Bestgate Road, Annapolis, Maryland 21401.  Ramos began shooting at employees of Baltimore Sun and Tribune Publishing, killing five employees and injuring others (defined above as the "Occurrence").

ANSWER:    ACE lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 10. To the extent further response is required, denied.

11.    On June 24, 2021, two lawsuits were filed in the Circuit Court for Anne Arundel County, Maryland on behalf of ten plaintiffs seeking damages from Baltimore Sun, Tribune Publishing, Bestgate, and St. John.  The lawsuits are captioned *Andrea Chamblee, et al. v. The Baltimore Sun Company, et al.* and *Beth Rittenour, et al. v. Bestgate Corporate Center, LLC, et al.*, Consolidated Case No. C-02-CV-21-000820 (defined above as the "Underlying Lawsuits"). The Underlying Lawsuits assert claims for wrongful death, survival, and negligence based on premises liability.

ANSWER:    ACE lacks knowledge or information sufficient to form a belief about the

truth of the allegations contained in paragraph 11. To the extent further response is required, denied.

12. ACE issued a commercial general liability insurance policy to Plaintiffs, Policy No. HDOG27869701, effective August 4, 2017 to August 4, 2018 (defined above as the "CGL Policy"). Baltimore Sun and Tribune Publishing are insureds under the CGL Policy. A true and correct copy of the CGL Policy is attached hereto as Exhibit A.

ANSWER: Paragraph 12 contains legal conclusions that do not require a response. To the extent that a response is required, ACE admits only that it issued the referenced insurance policy which, as a written document, speaks for itself, and to the extent that the terms and conditions of the ACE policy are inconsistent with the allegations contained in paragraph 12, such allegations are denied.

13. Pursuant to Insuring Agreement of Coverage A in the CGL Policy, ACE agreed to "pay those sums the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage'" that "is caused by an occurrence."

ANSWER: Paragraph 13 contains legal conclusions that do not require a response. To the extent that a response is required, ACE admits only that it issued the referenced insurance policy which, as a written document, speaks for itself, and to the extent that the terms and conditions of the ACE policy are inconsistent with the allegations contained in paragraph 13, such allegations are denied.

14. Insuring Agreement of Coverage A also provides that ACE "will have the right and duty to defend the insured against any 'suit' seeking those damages."

ANSWER: Paragraph 14 contains legal conclusions that do not require a response. To the extent that a response is required, ACE admits only that it issued the referenced insurance policy which, as a written document, speaks for itself, and to the extent that the terms and conditions of the ACE policy are inconsistent with the allegations contained in paragraph 14, such allegations are

denied.

15.     The CGL Policy has a per-occurrence limit of $1,000,000, and a matching per-occurrence deductible of $1,000,000.  Endorsement 27 to the CGL Policy, the Allocated Loss Adjustment Expense ("ALAE") Endorsement, requires Plaintiffs to reimburse the $1,000,000 deductible amount for any defense costs and damages under Coverage A.  Payment of defense costs erodes not only the CGL Policy deductible but also the CGL Policy limits of liability.

ANSWER:     Paragraph 15 contains legal conclusions that do not require a response.  To the extent that a response is required, ACE admits only that it issued the referenced insurance policy which, as a written document, speaks for itself, and to the extent that the terms and conditions of the ACE policy are inconsistent with the allegations contained in paragraph 15, such allegations are denied.

16.     ACE also issued a Workers Compensation and Employers Liability insurance policy to Plaintiffs, Policy No. C64416078, effective August 4, 2017 to August 4, 2018 (defined above as the "WC/EL Policy").  Baltimore Sun and Tribune Publishing are insureds under the WC/EL Policy.  A true and correct copy of the WC/EL Policy is attached hereto as Exhibit B.

ANSWER:     Paragraph 16 contains legal conclusions that do not require a response.  To the extent a response is required, ACE admits only that it issued the referenced insurance policy which, as a written document, speaks for itself, and to the extent the terms and conditions of the ACE policy are inconsistent with the allegations contained in paragraph 16, such allegations are denied.

17.     The WC/EL Policy consists of two coverage parts, a workers' compensation ("WC") coverage part, and an employer's liability ("EL") coverage part.  The WC coverage part "applies to bodily injury," including resulting death, "by accident or … disease," and obligates ACE to "pay promptly when due the benefits required of [Plaintiffs] by the workers compensation law."   The

- 5 -

EL coverage part "applies to bodily injury," including resulting death, "by accident or … disease," and obligates ACE to "pay all sums that [Plaintiffs] legally must pay as damages because of bodily injury to [Plaintiffs'] employees."

ANSWER:   Paragraph 17 contains legal conclusions that do not require a response.  To the extent that a response is required, ACE admits only that it issued the referenced insurance policy which, as a written document, speaks for itself, and to the extent the terms and conditions of the ACE policy are inconsistent with the allegations contained in paragraph 17, such allegations are denied.

18.    The WC coverage part provides that ACE has "the right and duty to defend at our expense any claim, proceeding or suit against you for benefits payable by this insurance." Likewise, the EL coverage part provides that ACE has "the right and duty to defend at our expense any claim, proceeding or suit against you for benefits payable by this insurance."

ANSWER: ACE admits only that it issued the referenced insurance policy, the terms of which speak for themselves, denies that the allegations in paragraph 18 accurately allege the full and complete terms of the policy, and denies all remaining allegations to the extent they do not fully and accurately set forth the policy's terms.

19.    The WC and EL coverage parts have a shared deductible of $1,000,000 per incident. Payments by Plaintiffs of workers compensation claims and payments of defense costs erode this shared deductible.

ANSWER: Paragraph 19 contains legal conclusions that do not require a response.  To the extent a response is required, ACE admits only that it issued the referenced insurance policy which, as a written document, speaks for itself, and to the extent the terms and conditions of the ACE policy are inconsistent with the allegations contained in paragraph 19, such allegations are denied.

20.    There is no cap or limit on ACE's obligation to provide coverage for defense

expenses under the EL coverage part.

ANSWER: Paragraph 20 contains legal conclusions that do not require a response. To the extent a response is required, ACE admits only that it issued the referenced insurance policy which, as a written document, speaks for itself, and to the extent the terms and conditions of the policy are inconsistent with the allegations contained in paragraph 20, ACE denies same.

21. When Plaintiffs initially informed ACE of the Occurrence on June 29, 2018, ACE sent Plaintiffs a letter dated July 11, 2018, advising that it was closing its file under the CGL Policy because the CGL Policy is a "no-risk transfer policy," *i.e.*, a policy with $1,000,000 in coverage limits and a matching $1,000,000 deductible. A true and correct copy of ACE's July 11, 2018 letter is attached hereto as Exhibit C.

ANSWER: ACE admits only that it sent the referenced correspondence which as a document speaks for itself. To the extent the allegations in paragraph 21 are inconsistent with complete contents of the document, they are denied.

22. Plaintiffs advised ACE in April 2021 that lawsuits concerning the Occurrence were going to be filed against Plaintiffs. Plaintiffs tendered the Underlying Lawsuits to ACE shortly after they were filed in June 2021. ACE did not make any timely response to Plaintiffs' communications or the tender of the Underlying Lawsuits.

ANSWER: ACE admits only that it received communications from Plaintiff pertaining to the Underlying Lawsuits and denies the remaining allegations in paragraph 22 as alleged.

23. On September 22, 2021, ACE for the first time substantively addressed its coverage obligations under the WC/EL Policy, which, unlike the CGL Policy, provides actual risk transfer and duty to defend coverage to Plaintiffs. ACE agreed to provide a defense to Baltimore Sun for the Underlying Lawsuits under the EL coverage part of the WC/EL Policy, but denied coverage, including a duty to defend, with respect to Tribune Publishing. ACE did not at this time respond or

provide any coverage position with respect to its CGL Policy concerning the Underlying Lawsuits. A true and correct copy of ACE's September 22, 2021 letter is attached hereto as Exhibit D.

ANSWER: ACE admits only that it sent correspondence to Plaintiffs regarding the Underlying Litigation which document speaks for itself and denies all remaining allegations in paragraph 23.

24. On January 28, 2022, ACE reversed course and accepted its duty to defend both Baltimore Sun and Tribune Publishing under the EL coverage part of the WC/EL Policy. A true and correct copy of ACE's January 28, 2022 letter regarding the WC/EL Policy is attached hereto as Exhibit E. For the first time, ACE also purported to accept coverage under the CGL Policy under a reservation of rights. A true and correct copy of ACE's January 28, 2022 letter regarding the CGL Policy is attached hereto as Exhibit F.

ANSWER: ACE admits only that it sent the referenced correspondence which as a document speaks for itself and denies all remaining allegations in paragraph 24.

25. On February 18, 2022, in a letter supplementing its January 28, 2022 correspondence, ACE took the position that some portion of Plaintiffs' defense costs must be "allocated" to the CGL Policy, a position that benefits ACE to the detriment of Plaintiffs. Given that the CGL Policy does not provide any actual defense costs coverage to Plaintiffs, any allocation of defense costs to the CGL Policy improperly would reduce the amount of defense costs for which ACE must provide coverage under the WC/EL Policy. Despite asserting that defense costs must be allocated to the CGL Policy, ACE simultaneously took the position that the amount of defense costs incurred by Plaintiffs was insufficient to exhaust the deductible and policy limits of the CGL Policy. A true and correct copy of ACE's February 18, 2022 letter is attached hereto as Exhibit G.

ANSWER: ACE admits only that it sent the referenced correspondence which are documents that speak for themselves. ACE denies the remaining allegations in paragraph 25.

26.     On May 23, 2022, Plaintiffs objected to ACE's assertion of a right to allocate defense costs to the CGL Policy, which amounts to an inappropriate and legally impermissible attempt by ACE to subrogate against its own insureds. A true and correct copy of Plaintiffs' May 23, 2022 letter is attached hereto as Exhibit H. ACE nevertheless has persisted in its demand for "allocation" of defense costs to the CGL Policy. To the extent ACE's purported acceptance of a defense under the CGL Policy was valid, Plaintiffs deselected the CGL Policy for purposes of any defense obligations ACE had under the CGL Policy.

ANSWER:     ACE admits only that it received a copy of the referenced May 23, 2022 letter, the content of which speaks for itself, and denies all remaining allegations in paragraph 26 as alleged.

27.     Plaintiffs have fully satisfied the $1,000,000 shared deductible for the WC and EL coverage parts under the WC/EL Policy.

ANSWER:     Paragraph 27 contains legal conclusions that do not require a response. To the extent a response is required, ACE denies the EL coverage part applies to the Underlying Lawsuits and denies all remaining allegations not specifically admitted.

28.     Plaintiffs have tendered substantial amounts of defense costs and supporting invoices to ACE and demanded full payment of same.  In breach of its obligations under the WC/EL Policy, ACE has failed and refused to make any payment of any of these defense costs.

ANSWER:     ACE admits only that Plaintiffs have demanded payment for certain defense costs and denies all remaining allegations.

29.     Additionally, ACE improperly and in bad faith has raised objections to Plaintiffs' selection of defense counsel and the rates of defense counsel.  ACE also improperly and in bad faith has tried to impose its "Litigation Guidelines" on defense counsel in connection with their defense of the Underlying Lawsuits.  All of this conduct is inappropriate because ACE's reservations of

rights as to its duty to defend raise a conflict of interest entitling Plaintiffs to be represented by independent counsel, control their own defense, and have ACE pay for that defense.

ANSWER:    ACE denies the allegations in paragraph 29 as alleged.

30.    Plaintiffs have substantially satisfied all policy conditions imposed on them under the WC/EL Policy.  Alternatively, the performance of such conditions has been excused as a matter of law or by ACE's conduct, and/or ACE otherwise is estopped from asserting any non-compliance with any such conditions.

ANSWER:    Paragraph 30 contains legal conclusions that do not require a response. To the extent a response is required, the allegations in paragraph 30 are denied.

## COUNT I

31.    The allegations of paragraphs 1 to 30 are incorporated by reference as if set forth fully herein.

ANSWER:    ACE incorporates and restates its responses to paragraphs 1 to 30 as though fully set forth herein.

32.    ACE acknowledged that both Plaintiffs are entitled to defense coverage in connection with the Underlying Lawsuits under the EL coverage part of the WC/EL Policy.

ANSWER:    ACE denies the allegations in paragraph 32.

33.    Despite ACE's acknowledgment that Plaintiffs are entitled to defense coverage under the WC/EL Policy, ACE has failed and refused to pay or reimburse any of Plaintiffs' defense costs.

ANSWER:    ACE denies the allegations in paragraph 33.

34.    ACE's failure and refusal to fulfill its defense obligations constitutes a breach of ACE's duty to defend under the WC/EL Policy.

ANSWER:    ACE denies the allegations in paragraph 34.

WHEREFORE, ACE respectfully requests that this Court enter a judgment in its favor and against Plaintiffs.

## COUNT II

35.     The allegations of paragraphs 1 to 34 are incorporated by reference as if set forth fully herein.

ANSWER:  ACE incorporates and restates its responses to paragraphs 1 to 34 as though fully set forth herein.

36.     Plaintiffs seek a declaration, pursuant to 28 U.S.C. § 2201, that ACE is not entitled to allocate defense costs to the CGL Policy because ACE is barred from doing so based on its failure to timely respond under the CGL Policy to Plaintiffs' tender of the Underlying Lawsuits; because ACE is estopped from shifting its defense obligations under the WC/EL Policy to the CGL Policy; and because doing so is an impermissible attempt to subrogate against its own insureds, Plaintiffs.

ANSWER:    ACE admits only that Plaintiffs seek the declaration as alleged, but denies Plaintiffs are entitled to such a declaration and denies all remaining allegations in paragraph 36 that are not specifically admitted.

37.     ACE is further estopped from raising other defenses to its duties to defend or indemnify Plaintiffs such as late notice.

ANSWER:    Paragraph 37 contains legal conclusions that do not require a response. To the extent a response is required, the allegations in paragraph 37 are denied.

38.     An actual and justiciable controversy exists between Plaintiffs and ACE with respect to whether ACE is entitled to allocation of defense costs to the CGL Policy.

ANSWER:    ACE admits the allegations in paragraph 38.

39.     A declaration of the parties' rights and obligations under the CGL Policy will serve to resolve the dispute between them.

ANSWER:    The allegations in paragraph 39 call for a legal conclusion and are not

- 11 -

directed at ACE and, therefore, no response is required.

WHEREFORE, ACE respectfully requests that this Court enter a judgment in its favor and against Plaintiffs.

## COUNT III

40.     The allegations of paragraphs 1 to 38 are incorporated by reference as if set forth fully herein.

ANSWER: ACE incorporates and restates its responses to paragraphs 1 to 38 as though fully set forth herein.

41.     Section 155 of the Illinois Insurance Code, 215 ILCS 5/155, provides an extra-contractual remedy to policyholders where an insurer's conduct is vexatious and unreasonable.  In determining whether an insurer's conduct is vexatious and unreasonable, courts consider the totality of the circumstances, including the insurer's attitude, whether the insured was forced to sue to recover, and whether the insurer interpreted its policy in an unreasonable manner, among other things.

ANSWER: The allegations in paragraph 41 call for a legal conclusion and are not directed at ACE and, therefore, no response is required.

42.     Where an insured demonstrates that an insurer's conduct was vexatious and unreasonable, the court may award reasonable attorneys' fees, other costs, and an amount not to exceed: (1) 60% of the amount that the insured is entitled to recover on its claim, exclusive of costs; (2) $60,000; or (3) the excess of the amount that the insured is entitled to recover, exclusive of costs, over the amount, if any, that the insurer offered to pay in settlement of the claim prior to the action.

ANSWER: The allegations in paragraph 42 call for a legal conclusion and are not directed at ACE and, therefore, no response is required.

43.     ACE has engaged in vexatious and unreasonable conduct in violation of Section

155 of the Illinois Insurance Code.

ANSWER:     ACE denies the allegations in paragraph 43.

44.     ACE acted vexatiously and unreasonably by failing to timely respond to Plaintiffs' tender of the Underlying Lawsuits, initially incorrectly denying coverage for Tribune Publishing, and subsequently by failing and refusing to pay or reimburse Plaintiffs' defense costs incurred in connection with the Underlying Lawsuits under the WC/EL Policy.

ANSWER:     ACE denies the allegations in paragraph 44.

45.     ACE acted vexatiously and unreasonably by demanding "allocation" of defense costs to the CGL Policy, which is an improper attempt to subrogate against its own insureds.

ANSWER:     ACE denies the allegations in paragraph 45.

46.     ACE acted vexatiously and unreasonably by raising objections to Plaintiffs' selection of defense counsel even though Plaintiffs are entitled to select independent counsel due to a conflict of interest created by ACE's reservations of rights.

ANSWER:     ACE denies the allegations in paragraph 46.

47.     ACE acted vexatiously and unreasonably by raising objections to the rates of Plaintiffs' defense counsel even though Plaintiffs are entitled to select independent counsel due to a conflict of interest created by ACE's reservations of rights, and ACE is obligated to pay the reasonable fees and expenses of such independent counsel.

ANSWER:     ACE denies the allegations in paragraph 47.

48.     ACE acted vexatiously and unreasonably by trying to impose "Litigation Guidelines" on Plaintiffs' defense counsel even though Plaintiffs are entitled to select independent counsel due to a conflict of interest created by ACE's reservations of rights, and independent counsel are not only allowed but obligated, to exercise their own professional judgment in defending Plaintiffs.

ANSWER:     ACE denies the allegations in paragraph 48.

WHEREFORE, ACE respectfully requests that this Court enter a judgment in its favor and against Plaintiffs.

### JURY TRIAL DEMAND

Defendant, ACE American Insurance Company demands a trial by jury for all issues triable by jury.

### ACE AMERICAN INSURANCE COMPANY'S AFFIRMATIVE DEFENSES

ACE hereby sets forth its separate and distinct affirmative defenses to the Complaint. By listing any matter as an affirmative defense, ACE does not assume the burden of proving any matter upon which Plaintiffs bears the burden of proof under applicable law. Moreover, by setting forth certain affirmative defenses below, ACE does not waive its right to assert additional defenses. ACE's investigation is ongoing and it reserves the right to assert additional defenses that may become known to it during the course of discovery.

### ACE's First Affirmative Defense

Plaintiffs' Complaint fails to state a claim against ACE upon which relief can be granted.

### ACE's Second Affirmative Defense

Plaintiffs' claims against ACE are barred, in whole or in part, to the extent that ACE has no duty to defend Plaintiffs based on the terms, conditions, and exclusions of the ACE policies.

### ACE's Third Affirmative Defense

Plaintiffs' claims against ACE are barred, in whole or in part, to the extent that ACE has no duty to indemnify Plaintiffs based on the terms, conditions, and exclusions of the ACE policies.

### ACE's  Fourth Affirmative Defense

Plaintiffs' claims against ACE are barred, in whole or in part, to the extent that they have failed to perform all of their obligations under the ACE policies.

- 14 -

### ACE's Fifth Affirmative Defense

Plaintiffs' claims against ACE are barred, in whole or in part, to the extent their claims implicate the equitable doctrines of estoppel, laches, unclean hands, or waiver.

### ACE's Sixth Affirmative Defense

Plaintiffs' claims for relief against ACE are subject to any applicable retained limits, self-insured retentions, deductibles, and the available limits of liability under the ACE policies.

### ACE's Seventh Affirmative Defense

Plaintiffs' claims for relief against ACE may be barred in whole or in part to the extent that any amounts that are the subject of Plaintiffs' claims were or are voluntarily paid by an insured.

### ACE's Eighth Affirmative Defense

Plaintiffs' claims for relief against ACE may be barred in whole or in part to the extent that any amounts that are the subject of Plaintiffs' claims were paid by an insured without ACE's prior consent.

### ACE's Ninth Affirmative Defense

Plaintiffs' claims for relief against ACE may be barred in whole or in part to the extent an insured has entered into a compromise settlement without ACE's consent.

### ACE's Tenth Affirmative Defense

To the extent it is determined that Plaintiffs are entitled to reimbursement or payment of any defense costs, ACE asserts in the alternative only that its obligation, if any, would be limited to payment of defense costs that are reasonable and necessary.

**WHEREFORE**, ACE respectfully requests this Court order relief in its favor and against Plaintiffs as follows:

i.    The Court dismiss Plaintiffs' Complaint on its merits and with prejudice; and

ii.   The Court provide such other and further relief that the Court deems just and proper.

## ACE AMERICAN INSURANCE COMPANY'S
## COUNTERCLAIM FOR DECLARATORY JUDGMENT

Plaintiff, ACE American Insurance Company ("ACE"), by its undersigned counsel, and for its Counterclaim for Declaratory Judgment against Defendants, The Baltimore Sun Company, LLC ("The Sun") and Tribune Publishing Company, LLC ("Tribune"), states as follows:

## NATURE OF THE ACTION

1.     This Counterclaim seeks a declaratory judgment pursuant to 28 U.S.C. §2201 *et seq.* and Fed. R. Civ. Pro. 57 as to the rights and obligations of the parties under two insurance policies ACE issued to Plaintiffs.  The first is a Workers' Compensation/Employers Liability Insurance policy, bearing Policy No. C64416078 effective August 4, 2017 to August 4, 2018 (the "WC/EL Policy") and a Commercial General Liability policy bearing Policy No. HDOG27869701, effective August 4, 2017 to August 4, 2018 (the "CGL Policy").

2.     ACE seeks a declaration that it had no duty to defend or indemnify The Sun or Tribune under the employers' liability coverage part, Part Two, of the WC/EL Policy in connection with two lawsuits filed by, *inter alia*, Beth Rittenour and Andrea Chamblee (the "Underlying Suits" or "Underlying Litigation") alleging wrongful death and bodily injury claims against The Sun and Tribune arising from a shooting that took place at The Capital Gazette newsroom in Baltimore, Maryland on June 28, 2018.

3.     ACE seeks a declaration that it properly allocated defense costs incurred by and on behalf of The Sun and Tribune in the Underlying Lawsuits to ACE's CGL Policy.

4.     ACE seeks a declaration that, to the extent it did have a duty to defend The Sun or Tribune against the Underlying Suits, ACE's defense obligation would have been triggered solely under the CGL Policy and that ACE had the contractual right under its policies to control the defense of The Sun and Tribune in the Underlying Suits, including the right to select and direct defense counsel.

5.     ACE asserts The Sun and Tribune breached the CGL Policy (and Part Two of the Employers' Liability coverage of the WC/EL Policy if deemed applicable) by unilaterally selecting defense counsel and incurring unauthorized, unreasonable and/or unnecessary defense costs without ACE's prior consent.

## PARTIES

6.     Plaintiff ACE is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania with its principal place of business in Philadelphia, PA.

7.     Upon information and belief, Defendant The Baltimore Sun Company, LLC ("The Sun") is a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business in Baltimore, Maryland. The Sun is a wholly-owned subsidiary of Tribune.

8.     Upon information and belief, Defendant Tribune Publishing Company, LLC ("Tribune") is a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business in Chicago, IL.

## JURISDICTION AND VENUE

9.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a), as this action is between citizens of different states, and the amount in controversy is in excess of $75,000, exclusive of interest and costs.

10.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), because a named insured resides in this District, and the Policy was delivered in Illinois to a named insured domiciled in Illinois.

## THE UNDERLYING *RITTENOUR* ACTION

11.     On or about June 24, 2021, Beth Rittenour and Erica Fischman filed a lawsuit against, *inter alia*, Tribune and The Sun captioned *Beth Rittenour, individually and a personal representative of the estate of Rebecca Smith and Erica Fischman, individually and as personal representative of*

*the estate of Gerald Fischman v. Bestgate Corporate Center, LLC, et al.*, Case No. C-02-CV-21-000823 in the Circuit Court for Ann Arundel County, Maryland (the "*Rittenour* Complaint" or "*Rittenour* Action"). A copy of the Complaint filed in the *Rittenour* Action is attached as Exhibit A.

12.     The *Rittenour* Complaint alleges that on or about May 1, 2014, Capital-Gazette Communications, LLC ("CGC") was purchased by Tribune through its subsidiary The Sun. *See id.* at ¶ 30.

13.     The *Rittenour* Complaint alleges that following the acquisition, CGC, not Defendants, maintained control over the day-to-day employee conduct and the power to select, hire and discharge employees. *See id.* at ¶ 33.

14.     The *Rittenour* Complaint alleges that "Rebecca Smith and Gerald Fischman were employees of Capital-Gazette Communications, LLC. *Neither Ms. Smith nor Mr. Fischman were employees of The Sun or Tribune. . .*" *Id.* at ¶ 34 (emphasis added).

15.     The *Rittenour* Complaint further alleges that The Sun and Tribune assumed responsibility for and provided administrative support for certain operations of CGC and, in doing so, assumed a duty of care with respect to the CGC employees to use reasonable and ordinary care in providing a safe and secure facility where they could perform their work. *See id.* at ¶ 31.

16.     The *Rittenour* Complaint alleges The Sun and Tribune leased and provided the building located at 888 Bestgate Road, Annapolis, Maryland (the "Property") to CGC for its newsroom and offices. *See id.* at ¶ 90.

17.     According to the *Rittenour* Complaint, on or about September 1, 2014, at the direction of The Sun and Tribune, CGC relocated its offices, newsroom and employees to the Property, where security protection for CGC employees was grossly inadequate. *See id.* at ¶ 97.

18.     The *Rittenour* Complaint alleges that The Sun and Tribune failed to take any steps to protect the employees of CGC from known and foreseeable risks to their health and safety at the Property. *See id.* at ¶ 96.

19.     The *Rittenour* Complaint alleges that as a direct result of deficient or disabled security measures, Jarrod Warren Ramos was able to enter and conduct covert reconnaissance, surveillance, and documentation of the Property at some point in time prior to June 28, 2018. *See id*. at ¶ 102.

20.     Further, the *Rittenour* Complaint alleges that on June 28, 2018, Mr. Ramos entered the Property and discharged a shotgun multiple times, striking and killing, *inter alia*, Ms. Smith and Mr. Fischman. *See id*. at ¶¶ 103-118.

21.     The Estate of Rebecca Smith and the Estate of Gerald Fischman asserted survivor actions against The Sun and Tribune in the *Rittenour* Complaint. *See id*. at ¶¶ 149-159; 166-176.

22.     Beth Rittenour and Erica Fischman asserted wrongful death actions against The Sun and Tribune in the *Rittenour* Complaint. *See id.* at ¶¶ 160-165; 177-182.

## THE UNDERLYING *CHAMBLEE* ACTION

23.     On or about June 24, 2021, various plaintiffs filed a lawsuit against, *inter alia*, The Sun and Tribune captioned *Andrea Chamblee, personally and as the personal representative of the estate of John P. McNamara, et al. v. The Baltimore Sun Company, LLC, et al.*, Case No. C-02-CV-21-000820 in the Circuit Court for Ann Arundel County, Maryland (the "*Chamblee* Complaint" or "*Chamblee* Action"). A copy of the Complaint filed in the Chamblee Action is attached as Exhibit B.

24.     The *Chamblee* Complaint alleges that The Sun, under the Tribune corporate umbrella, acquired CGC in 2014. *See id*. at ¶¶ 3, 61.

25.     According to the *Chamblee* Complaint, CGC operated The Capital Gazette, its news publication. *See id*. at ¶ 61.

26.     The *Chamblee* Complaint alleges that Rachael Pacella, Selene San Felice, Wendy A. Winters, Philip Davis, Paul Gillespie, Robert K. Hiaasen, Anthony Messenger, and John P. McNamara "were employees of Capital-Gazette Communications, LLC; *they were not employees of either The Sun or the Tribune. . .*" *Id.* at ¶ 62 (emphasis added).

- 19 -

27.     The *Chamblee* Complaint alleges that the work of Ms. Pacella, Ms. San Felice, Ms. Winters and Mr. Davis, Mr. Gillespie, Mr. Hiaasen, Mr. Messenger and Mr. McNamara was controlled by CGC. *See id*. at ¶ 63.

28.     The *Chamblee* Complaint further alleges that The Sun and Tribune undertook to perform certain tasks and provide certain services relating to the operations of CGC, including, but not limited to, providing physical premises from which CGC's employees performed their work and making decisions related to security provided at those premises. *See id*. at ¶ 64.

29.     The Sun, with Tribune's approval, allegedly leased office space at the Property and The Sun and Tribune directed CGC to move its newsroom and operations to the Property. *See id*. at ¶¶ 67, 77, 113.

30.     According to the *Chamblee* Complaint, The Sun and Tribune failed to take any steps to protect the CGC employees from known and foreseeable risks to their health and safety at the Property. *See id*. at ¶¶ 78-83, 115.

31.     Further, the *Chamblee* Complaint alleges that as a direct result of deficient, non-existent, or disabled security measures, Mr. Ramos was able to enter and conduct covert reconnaissance, surveillance, and documentation of the Property sometime prior to June 28, 2018. *See id*. at ¶ 118.

32.     The *Chamblee* Complaint alleges that, on June 28, 2018, Mr. Ramos entered the Property and discharged a shotgun multiple times, striking and killing Ms. Winters, Mr. Hiaasen, and Mr. McNamara. *See id*. at ¶¶ 119-140.

33.     The *Chamblee* Complaint alleges that Ms. Pacella, Ms. San Felice, Mr. Davis, Mr. Gillespie, and Mr. Messenger were present during the June 28, 2018 shooting and now suffer extreme emotional distress. *See id*.

34.     Andrea Chamblee, as Personal Representative of the Estate of John P. McNamara, Montana Geimer, as Personal Representative of the Estate of Wendy A. Winters, and Benjamin

Hiaasen, as Personal Representative of the Estate of Robert K. Hiaasen, asserted survival actions against The Sun and Tribune in the *Chamblee* Complaint. *See id*. at ¶¶ 141 -151; 179-189; 217-227.

35.     Andree Chamblee, Phoenix Geimer, Montana Geimer, Winters L. Larca, Summerleigh Geimer, Maria Hiaasen, Benjamin Hiaasen, Samantha Hiaasen, and Hannah Hiaasen assert wrongful death actions against The Sun and Tribune in the *Chamblee* Complaint. *See id*. at ¶¶ 161-170, 199-208, 237-246.

36.     Mr. Davis, Mr. Gillespie, Mr. Messenger, Ms. Pacella, and Ms. Felice asserted negligence and premises liability actions against The Sun and Tribune in the *Chamblee* Complaint. *See id*. at ¶¶ 255-264, 273-282, 291-300, 309-318, 327-336.

37.     The *Rittenour* Action was consolidated into the *Chamblee* Action on or about January 24, 2022.

38.     In the consolidated *Rittenour* and *Chamblee* Actions, The Sun and Tribune both took the position that they were, in fact, the actual employers of all of the Underlying Plaintiffs (as defined herein), and maintained that all claims asserted in both the *Rittenour* and *Chamblee* Actions were barred by Maryland Labor and Employment Code Ann. §9-509, which provides in pertinent part, that: "the compensation provided under this title to a covered employee or the dependent of a covered employee is in place of any right of action against any person." (hereinafter "Workers' Compensation Exclusivity").

### THE SETTLEMENT OF THE UNDERLYING LAWSUITS

39.     In or about October 2022, The Sun and Tribune reached a confidential settlement of the claims made by the Underlying Plaintiffs, and the *Rittenour* and *Chamblee* Actions were dismissed with prejudice (the "Underlying Settlement").

40.     ACE was not a party to the Underlying Settlement.

41.     Prior to entering into the Underlying Settlement, Defendants did not seek ACE's consent, nor was ACE asked to fund any part of the settlement.

42. Nevertheless, The Sun and Tribune have submitted invoices for substantial fees and costs they incurred in connection with their defense of the *Rittenour* and *Chamblee* Actions to ACE demanding payment under the ACE policies at issue.

43. The Sun and Tribune assert that their defense costs must be paid under Part Two of the WC/EL Policy.

## THE WC/EL POLICY

44. ACE issued the WC/EL Policy to Tronc, Inc. as the named insured for the policy period of August 4, 2017 to August 4, 2018. A copy of the WC/EL Policy is attached as Exhibit C. The WC/EL Policy has a $1,000,000 per incident deductible.

45. The Tribune Publishing Company, LLC and The Baltimore Sun Company, LLC are named insureds under the WC/EL Policy. *See id*. at ACE000039.

46. The General Section of the WC/EL Policy provides, in pertinent part, as follows:

**GENERAL SECTION**

\* \* \*

**C. Workers Compensation Law**

Workers Compensation Law means the workers or workmen's compensation law and occupational disease law of each state or territory named in Item 3.A. of the Information Page. It includes any amendments to that law which are in effect during the policy period. It does not include any federal workers or workmen's compensation law, any federal occupational disease law or the provisions of any law that provide nonoccupational disability benefits.

\* \* \*

**E. Locations**

This policy covers all of your workplaces listed in Items 1 or 4 of the Information Page; and it covers all other workplaces in Item 3.A. states unless you have other insurance or are self-insured for such workplaces.

*Id.* at ACE000297.

47. Item 3A of the Policy's Information Page provides as follows:

**Item 3A. Workers' Compensation Insurance:** Part One of the policy applies to the Workers' Compensation Law of the states listed here:

AZ,CA,CT,DC,FL,GA,IL,IN,KY,MA,MD,MI,MN,MO,MT,NC,NH,NV,NY,PA,SC,TN,TX,UT,VA

*Id.* at ACE000004.

48.     Part One - Workers Compensation Insurance of the Policy provides, in pertinent part, as follows:

### PART ONE - WORKERS COMPENSATION INSURANCE

**A.  How This Insurance Applies**

This workers compensation insurance applies to bodily injury by accident or bodily injury by disease. Bodily injury includes resulting death.

1.   Bodily injury by accident must occur during the policy period.

* * *

**B.  We Will Pay**

We will pay promptly when due the benefits required of you by the workers compensation law.

**C.  We Will Defend**

We have the right and duty to defend at our expense any claim, proceeding or suit against you for benefits payable by this insurance. We have the right to investigate and settle these claims, proceedings or suits.

We have no duty to defend a claim, proceeding or suit that is not covered by this insurance.

* * *

**F.  Payments You Must Make**

You are responsible for any payments in excess of the benefits regularly provided by the workers compensation law.

* * *

If we make any payments in excess of the benefits regularly provided by the workers compensation law on your behalf, you will reimburse us promptly.

* * *

*Id.* at ACE000297-298.

49.     Part Two - Employers Liability Insurance of the Policy provides, in pertinent part, as follows:

### PART TWO - EMPLOYERS LIABILITY INSURANCE

**A. How This Insurance Applies**

This employers liability insurance applies to bodily injury by accident or bodily injury by disease. Bodily injury includes resulting death.

1. The bodily injury must arise out of and in the course of the injured employee's employment by you.

2. The employment must be necessary or incidental to your work in a state or territory listed in Item 3.A. of the Information Page.

3. Bodily injury by accident must occur during the policy period.

* * *

5. If you are sued, the original suit and any related legal actions for damages for bodily injury by accident or by disease must be brought in the United States of America, its territories or possessions, or Canada.

**B. We Will Pay**

We will pay all sums that you legally must pay as damages because of bodily injury to your employees, provided the bodily injury is covered by this Employers Liability Insurance.

The damages we will pay, where recovery is permitted by law, include damages:

1. For which you are liable to a third party by reason of a claim or suit against you by that third party to recover the damages claimed against such third party as a result of injury to your employee;

2. For care and loss of services; and

3. For consequential bodily injury to a spouse, child, parent, brother or sister of the injured employee; provided that these damages are the direct consequence of bodily injury that arises out of and in the course of the injured employee's employment by you; and

4. Because of bodily injury to your employee that arises out of and in the course of employment, claimed against you in a capacity other than as employer.

**C. Exclusions**

This insurance does not cover:

* * *

4. Any obligation imposed by a workers compensation, occupational disease, unemployment compensation, or disability benefits law, or any similar law;

* * *

**D. We Will Defend**

We have the right and duty to defend, at our expense, any claim, proceeding or suit against you for damages payable by this insurance. We have the right to investigate and settle these claims, proceedings and suits.

We have no duty to defend a claim, proceeding or suit that is not covered by this insurance. We have no duty to defend or continue defending after we have paid our applicable limit of liability under this insurance.

*Id.* at ACE000298-299.

50.     Part Four - Your Duties If Injury Occurs provides, in pertinent part, as follows:

**PART FOUR - YOUR DUTIES IF INJURY OCCURS**

Tell us at once if injury occurs that may be covered by this policy. Your other duties are listed here.

* * *

4.   Cooperate with us and assist us, as we may request, in the investigation, settlement or defense of any claim, proceeding or suit.

* * *

6.   Do not voluntarily make payments, assume obligations or incur expenses, except at your own cost.

*Id.* at ACE000301.


**THE CGL POLICY**

51.     ACE issued the CGL Policy to Tronc, Inc. as the named insured for the policy period

August 4, 2017 to August 4, 2018. A copy of the CGL Policy is attached as Exhibit D.

52.     Both The Sun and Tribune qualify as insureds on the CGL Policy.

53.     The Insuring Agreement of the CGL Policy states, in part:

**1. Insuring Agreement**

a.   We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

- 25 -

Exhibit D.

54.    The CGL Policy provides that coverage does not apply to:

**d.    Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

Exhibit D.

55.    The CGL Policy provides a per "occurrence" limit for covered bodily injury claims of $1,000,000, which is subject to a $1,000,000 deductible.   Exhibit D.

## THE COVERAGE DISPUTE

56.    The Underlying Plaintiffs alleged that The Sun and Tribune were *not* the employers of those wounded or killed in the June 28, 2018 shooting.

57.    In their complaints and throughout the litigation of the Underlying Actions, the Underlying Plaintiffs *expressly disavowed* that Ms. Smith, Mr. Fischman, Ms. Pacella, Ms. San Felice, Ms. Winters and Mr. Davis, Mr. Gillespie, Mr. Hiaasen, Mr. Messenger and Mr. McNamara were employees of either The Sun or Tribune – they alleged they were employees of CGC.   *See* Exhibit A at ¶ 34; Exhibit B at ¶ 62.

58.    Based on a four-corners analysis of the allegations in the Underlying Complaints, the only ACE policy that could have potentially been triggered in connection with the Underlying Lawsuits was the CGL Policy.

59.    Coverage under the WC/EL Policy is limited to legal liabilities an insured has to employees who are injured during the course of their employment for the insured.  Because The Sun and Tribune were alleged *not* to be the employers of those wounded or killed in the June 28, 2018 shooting, coverage is not afforded to The Sun and Tribune for those claims under the WC/EL Policy. The only ACE Policy potentially applicable for The Sun's and Tribune's liabilities to the shooting victims, based on the shooting victim's own allegations that they were not The Sun's and Tribune's

employees, would have been the CGL Policy. In an apparent recognition of this, The Sun and Tribune tendered the *Rittenour* Action and *Chamblee* Action to ACE for coverage under the CGL Policy. Exhibit D.

60.     The Sun and Tribune were also insured under an excess policy issued by Travelers Property Casualty Company of America ("the Travelers Policy").

61.     The Travelers' Policy applied excess of ACE's CGL Policy.

62.     When The Sun and Tribune entered into the Underlying Settlement, Travelers fully funded the Underlying Settlement for settlement amounts in excess of the $1 million deductible and policy limits applicable to the CGL Policy. Travelers' contribution to the settlement of the Underlying Lawsuits confirms that the only ACE policy potentially applicable to the Underlying Lawsuits, given the allegations of the Underlying Plaintiffs, was the CGL Policy.

63.     The Sun and Tribune asserted in the Underlying Litigation that they were the actual employers of the shooting victims and, therefore, as employees of The Sun and Tribune, Underlying Plaintiffs were limited to relief afforded under Maryland's workers compensation program. If The Sun's and Tribune's position was correct – that the exclusive remedy afforded to those wounded or killed in the June 28, 2018 shooting was workers' compensation – the only potentially applicable coverage would then be Part One - Workers Compensation Insurance of the WC/EL Policy.

64.     In support of The Sun's and Tribune's claims they were employers of the shooting victims, The Sun and Tribune produced documents and records which The Sun and Tribune asserted established they both were joint employers of the shooting victims.

65.     Workers' compensation benefits have been paid to Underlying Plaintiffs under Part One – Workers Compensation Insurance of the WC/EL Policy.

66.     Despite having claimed the shooting victims' sole remedy was benefits afforded under Maryland's workers' compensation program, The Sun and Tribune nevertheless sought coverage for

the *Rittenour* Action and *Chamblee* Action under Part Two - Employers Liability Insurance of the WC/EL Policy.

67.     The *Rittenour* Action and *Chamblee* Action did not seek damages payable by Part Two - Employers Liability Insurance of the Policy.  The *Rittenour* Action and *Chamblee* Action did not allege any facts that would trigger any valid exception to the exclusive remedy protection afforded to employers in Maryland and that could potentially trigger employer's liability coverage under Part Two of the WC/EL Policy.  Therefore, ACE denied it had any obligation to fund, or indemnify The Sun or Tribune for, any amounts in connection with the Underlying Settlement under Part Two - Employers Liability Insurance of the Policy.

68.     Further, ACE has no duty to reimburse any defense expenses incurred by The Sun or Tribune in connection with the *Rittenour* Action and *Chamblee* Action under Part Two – Employers Liability Insurance of the Policy.

69.     In light of The Sun's and Tribune's contention they were the employers of the Underlying Plaintiffs, ACE opened a claim file under Part Two – Employers Liability Insurance of the WC/EL while it continued to investigate the Underlying Plaintiffs' claims and monitor the Underlying Litigation, but did so pursuant to a reservation of rights in which ACE expressly reserved its right to seek to recover costs paid under Part Two – Employers Liability Insurance of the WC/EL if coverage was available under the CGL Policy.

70.     Alternatively, even if ACE is found to have had an obligation to defend The Sun and Tribune against the *Rittenour* Action and *Chamblee* Action under Part Two - Employers Liability Insurance of the Policy, The Sun and Tribune breached ACE's contractual right to control the defense by unilaterally retaining their own defense counsel and directing a defense that generated in excess of $4 million in defense fees and expenses.

71.     ACE's obligation, if any, to pay defense costs under any of the ACE policies at issue is limited to payment of only those defense costs that are both reasonable and necessary.

- 28 -

**COUNT I**
**DECLARATORY JUDGMENT**
**(No Duty to Defend or Indemnify Under Part Two of the WC/EL Policy)**

72.     ACE restates and realleges paragraphs one (1) through seventy-one (71) as if fully set forth herein.

73.     There is an actual legal controversy with regard to the parties' rights and obligations under the ACE policies.

74.     ACE contends that, because it had no obligation to defend The Sun or Tribune against the allegations set forth in the *Rittenour* Action and *Chamblee* Action under Part Two - Employers Liability Insurance of the WC/EL Policy, it has no duty to reimburse any defense expenses incurred by The Sun or Tribune in connection with those actions.

75.     Part Two - Employers Liability Insurance of the WC/EL Policy provides, in pertinent part, that "[t]his employers liability insurance applies to bodily injury by accident . . . [t]he bodily injury must arise out of and in the course of the injured employee's employment by you . . ."

76.     Part Two - Employers Liability Insurance of the WC/EL Policy provides, in pertinent part, that ACE "will pay all sums that you must pay as damages because of bodily injury to your employees, provided the bodily injury is covered by this Employers Liability Insurance."

77.     Part Two - Employers Liability Insurance of the WC/EL Policy provides, in pertinent part, that ACE has "the right and duty to defend, at [its] expense, any claim, proceeding or suit against you for damages payable by this insurance " and ACE has "no duty to defend a claim, proceeding or suit that is not covered by this insurance."

78.     The *Rittenour* Complaint alleges that "Rebecca Smith and Gerald Fischman were employees of Capital-Gazette Communications, LLC. Neither Ms. Smith nor Mr. Fischman were employees of The Sun or Tribune. . ."  Exhibit A at ¶ 34.

79.     The *Chamblee* Complaint alleges that Ms. Pacella, Ms. San Felice, Ms. Winters, Mr. Davis, Mr. Gillespie, Mr. Hiaasen, Mr. Messenger and Mr. McNamara "were employees of Capital-

Gazette Communications, LLC; they were not employees of either The Sun or the Tribune. . . ." Exhibit B at ¶ 62.

80.     As such, the allegations of the *Rittenour* Action and *Chamblee* Action do not trigger coverage under Part Two - Employers Liability Insurance of the Policy, since there is no allegation that the Underlying Plaintiffs were employees of The Sun or Tribune and the Underlying Plaintiffs *expressly disavowed* that they were employees of The Sun and Tribune.

81.     Further, the Underlying Plaintiffs did not seek damages payable under Part Two – Employers Liability Insurance of the Policy.

82.     Exclusion 4 of Part Two - Employers Liability Insurance of the WC/EL Policy precludes coverage for "[a]ny obligation imposed by a workers' compensation, occupational disease, unemployment compensation, or disability benefits law, or any similar law."

83.     Underlying Plaintiffs were eligible to receive Maryland workers' compensation benefits and eight received workers compensation benefits in connection with the bodily injury allegations and damages sought in the *Rittenour* Action and *Chamblee* Action.

84.     Further, The Sun and Tribune maintained that any obligation they might have owed to the Underlying Plaintiffs was imposed by a workers' compensation or similar law as the employer of the Underlying Plaintiffs. The Sun and Tribune, therefore, maintained that the *Rittenour* Action and *Chamblee* Action were barred by Maryland's Workers' Compensation Exclusivity.

85.     Exclusion 4 of Part Two – Employers Liability Insurance of the WC/EL Policy expressly applied to preclude coverage for the *Rittenour* Action and *Chamblee* Action.

86.     The application of Exclusion 4 of Part Two – Employers Liability Insurance can be made irrespective of a determination of the Workers' Compensation Exclusivity by a court.

87.     In accordance with the foregoing, ACE had no duty to defend The Sun or Tribune against the allegations set forth in the *Rittenour* Action and *Chamblee* Action under Part Two - Employers Liability Insurance of the WC/EL Policy, and therefore has no obligation now to

reimburse any defense expenses The Sun or Tribune incurred or to indemnify any settlement they made in connection with the Underlying Lawsuits.

WHEREFORE, ACE American Insurance Company respectfully requests that this Court enter an Order granting the following relief:

1. Declaring the respective rights and obligations of the parties under the WC/EL Policy;

2. Declaring that ACE American Insurance Company had no duty to defend and concomitantly no obligation to reimburse The Baltimore Sun Company, LLC or Tribune Company Publishing LLC with respect to defense costs incurred in the *Rittenour* and *Chamblee* Actions under Part Two - Employers Liability Insurance of the WC/EL Policy;

3. Declaring that ACE American Insurance Company has no duty to indemnify The Baltimore Sun Company, LLC or Tribune Publishing Company LLC with respect to any settlement relating to the *Rittenour* and *Chamblee* Actions Under Part Two – Employers Liability Insurance of the WC/EL Policy; and

4. Awarding any and all other relief that this Court deems appropriate.

## COUNT II
## DECLARATORY JUDGMENT
### (ACE Properly Allocated The Sun's and Tribune's Defense Costs to the CGL Policy)

88. ACE restates and realleges paragraphs one (1) through seventy-one (71) as if fully set forth herein.

89. This is an actual legal controversy between the parties as to their rights and obligations under the ACE policies.

90. Coverage under the WC/EL Policy, which Plaintiffs allege should have applied to the Underlying Litigation (but it did not), is limited to legal liabilities an insured has to its own employees who are injured during the course of their employment for the insured. Exhibit C.

91. In the Underlying Litigation, The Sun and Tribune were alleged *not* to be the employers of those wounded or killed in the June 28, 2018 shooting.

- 31 -

92.     Based on the Underlying Plaintiffs' allegations, the only ACE Policy potentially applicable for The Sun's and Tribune's potential liabilities to the shooting victims, based on the shooting victim's own allegations that they were not The Sun's and Tribune's employees, was ACE's CGL Policy.

93.     In an apparent recognition of this, The Sun and Tribune tendered the *Rittenour* Action and *Chamblee* Action to ACE for coverage *under the CGL Policy*.  Exhibit E.

94.     The Sun and Tribune were also insured under an excess policy issued by Travelers Property Casualty Company of America ("the Travelers' Policy").  The Travelers Policy was excess over ACE's CGL Policy.  Consistent with the Underlying Plaintiffs' allegations that they were *not* employees of The Sun or Tribune), Travelers fully funded settlement amounts paid in connection with the Underlying Lawsuits that were excess of the coverage afforded under ACE's CGL Policy.

95.     Accordingly, ACE's allocation of The Sun's and Tribune's defense costs to the ACE CGL Policy was proper and correct.

WHEREFORE, ACE American Insurance Company respectfully requests that this Court enter an Order granting the following relief:

1.     Declaring the respective rights and obligations of the parties under the CGL Policy;

2.     Declaring that ACE American Insurance Company properly allocated The Sun's and Tribune's defense costs to the CGL Policy;

3.     Declaring that none of The Sun's and Tribune's defense costs should be allocated to Under Part Two – Employers Liability Insurance of the WC/EL Policy; and

4.     Awarding any and all other relief that this Court deems appropriate.

## COUNT III
## DECLARATORY JUDGMENT

**(Alternative Relief – ACE is Only Responsible for Reasonable and Necessary Defense Costs The Sun and Tribune Incurred After ACE Received Notice of the Underlying Suits)**

96.     ACE restates and realleges paragraphs one (1) through seventy-one (71) as if fully set forth herein.

97.     There is an actual legal controversy with regard to the parties' rights and obligations under the ACE policies.

98.     Part Two – Employers Liability Insurance of the WC/EL Policy provides, in pertinent part, that ACE has "the right and duty to defend, at [its] expense, any claim, proceeding or suit against you for damages payable by this insurance. [ACE has] the right to investigate and settle these claims, proceedings and suits."

99.     Part Four – Your Duties If Injury Occurs of the WC/EL Policy provides, in pertinent part, that if injury occurs the insured(s) must "[c]ooperate with us and assist us, as we may request, in the investigation, settlement or defense of any claim, proceeding or suit."

100.     Part Four – Your Duties If Injury Occurs of the WC/EL Policy provides, in pertinent part, that if injury occurs the insured(s) must "not voluntarily make payments, assume obligations or incur expenses, except at your own cost."

101.     The Sun and Tribune were contractually bound under the WC/EL Policy to cooperate fully with ACE and to assist ACE as ACE requested in the investigation, settlement or defense of the *Rittenour* Action and *Chamblee* Action.

102.     The WC/EL Policy prohibited The Sun and Tribune from making voluntary payments, assuming obligations or incurring expenses, except at their own cost.

103.     If ACE is found to have had an obligation to defend The Sun or Tribune against the allegations set forth in the *Rittenour* Action and *Chamblee* Action under Part Two - Employers Liability Insurance of the WC/EL Policy (which ACE denies), ACE had the contractual right to control the defense of The Sun and Tribune, including the selection of defense counsel.

- 33 -

104.    If ACE is found to have had an obligation to defend The Sun or Tribune against the allegations set forth in the *Rittenour* Action and *Chamblee* Action under Part Two - Employers Liability Insurance of the WC/EL Policy (which ACE denies), then ACE had the exclusive contractual right to appoint and manage defense counsel.

105.    The Sun and Tribune are seeking reimbursement from ACE of amounts in excess of $4,000,000 in defense counsel fees and other costs that they claim to have incurred to date, including fees and costs incurred prior to notifying ACE of the *Rittenour* Action and *Chamblee* Action, without first obtaining ACE's prior approval to incur those costs under Part Two – Employers Liability Insurance of the WC/EL Policy.

106.    The Sun and Tribune breached ACE's contractual right to control the defense by unilaterally selecting counsel, voluntarily incurring significant unreasonable and unnecessary defense costs and expenses without ACE's prior consent and otherwise failing to cooperate in the defense pursuant to the terms and conditions of the WC/EL Policy.

107.    In unilaterally incurring defense costs and expenses without ACE's prior consent, The Sun and Tribune breached the WC/EL Policy's cooperation and voluntary payments provisions.

108.    On these facts, The Sun's and Tribune's breaches of the WC/EL Policy void any rights they may have had to reimbursement under that Policy.

109.    Even if ACE were deemed to have any obligation to reimburse any of the defense expenses unilaterally and voluntarily incurred by The Sun or Tribune, which ACE denies, ACE should then only be required under the WC/EL Policy to reimburse The Sun or Tribune for reasonable defense costs incurred after it received notice of the Underlying Suits with respect to the *Rittenour* Action and *Chamblee* Action.

WHEREFORE, Plaintiff ACE American Insurance Company respectfully requests that this Court enter an Order granting the following relief:

1.    Declaring the respective rights and obligations of the parties under the WC/EL Policy;

- 34 -

2. Declaring that ACE American Insurance Company was entitled to control the defense and/or the right to select and manage defense counsel of The Baltimore Sun Company, LLC and Tribune Publishing Company, LLC in the *Rittenour* Action and *Chamblee* Action;

3. Declaring that no conflict of interest existed that would afford The Sun and Tribune the right to appoint independent defense counsel;

4. Declaring that The Baltimore Sun Company, LLC and Tribune Publishing Company, LLC breached the WC/EL Policy's cooperation and/or voluntary payments provisions;

5. Declaring that ACE American Insurance Company has no obligation to reimburse The Baltimore Sun Company, LLC and Tribune Publishing Company, LLC with respect to defense costs incurred in the *Rittenour* and *Chamblee* Actions under Part Two - Employers Liability Insurance of the WC/EL Policy;

6. Or, alternatively, declaring that ACE American Insurance Company is obligated to reimburse The Baltimore Sun Company LLC or Tribune Publishing Company, LLC only for a share of the fees incurred in the defense of the *Rittenour* Action and *Chamblee* Action that were reasonable and necessary and incurred after the actions were tendered to ACE under Part Two – Employers Liability Insurance of the WC/EL Policy;

7. Awarding any and all other relief that this Court deems appropriate.

Respectfully Submitted,

ACE AMERICAN INSURANCE COMPANY

Dated: May 18, 2023    By:    */s/ Richard A. Hodyl*
Joseph A. Hinkhouse
Richard A. Hodyl
HINKHOUSE WILLIAMS WALSH LLP
180 North Stetson Ave., Suite 3400
Chicago, IL 60601
Tel: (312) 784-5443
rhodyl@hww-law.com
Attorneys for Defendant ACE American Insurance Company

**CERTIFICATE OF SERVICE**

I hereby certify that on May 18, 2023, the foregoing document was served upon all counsel of record by electronic service via the Illinois E-Filing System:

**John Daniel Shugrue**
Reed Smith LLP
10 South Wacker Drive
40th Floor
Chicago, IL 60606
(312) 207-1000
Fax: Not a member
Email: jshugrue@reedsmith.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John Stanley Vishneski**
Reed Smith LLP
10 South Wacker Drive
40th Floor
Chicago, IL 60606
(312) 207 2404
Fax: Active
Email: jvishneski@reedsmith.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew Michael Barrios**
Reed Smith LLP
10 S. Wacker Drive
40th Floor
Chicago, IL 60606
312-207-2757
Email: abarrios@reedsmith.com
*ATTORNEY TO BE NOTICED*

**John Andrew Moss**
Reed Smith LLP
10 South Wacker Drive
40th Floor
Chicago, IL 60606
(312)207-1000
Fax: Not a member
Email: amoss@reedsmith.com
*ATTORNEY TO BE NOTICED*

By:     */s/ Richard Hodyl*
Joseph A. Hinkhouse
Richard A. Hodyl
HINKHOUSE WILLIAMS WALSH LLP
180 North Stetson Ave., Suite 3400
Chicago, IL 60601
Tel: (312) 784-5443
rhodyl@hww-law.com
Attorneys for Defendant ACE American Insurance Company