# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| TRIBUNE PUBLISHING COMPANY, LLC and THE BALTIMORE SUN COMPANY, LLC,<br><br>    Plaintiffs,<br><br>v.<br><br>ACE AMERICAN INSURANCE COMPANY,<br><br>    Defendant. | Case No. 22-cv-7327<br><br>Hon. Matthew F. Kennelly |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT ON COUNT I OF THEIR FIRST AMENDED COMPLAINT AGAINST ACE AMERICAN INSURANCE COMPANY**

# **TABLE OF CONTENTS**

**Page**

ARGUMENT ........................................................................................................................... 2

   I.  BY AGREEING TO DEFEND PLAINTIFFS, ACE HAD A DUTY TO DEFEND UNTIL IT OBTAINED A DECLARATION HOLDING OTHERWISE. .......................................... 3

      A.  The WC/EL Policy. .............................................................................................. 3

      B.  The Workers' Compensation Claims and Underlying Suits. .............................. 3

      C.  ACE Accepted and Confirmed Its Duty to Defend on Multiple Occasions. ...... 4

      D.  ACE Breached Its Duty to Defend. ..................................................................... 5

  II.  ACE HAD A DUTY TO DEFEND THE UNDERLYING SUITS IN ANY EVENT. ......... 8

  III.  EXCLUSION 4 DOES NOT PRECLUDE ACE'S DUTY TO DEFEND. .......................... 12

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*AMCO Ins. Co. v. Northern Heritage Builders, LLC*,
    No. 11 C 575, 2011 U.S. Dist. LEXIS 145405 (N.D. Ill. Dec. 19, 2011) ................................9

*Burson-Marsteller, Inc. v. Tallgrass Tech. Corp.*,
    No. 85 C 5162, 1987 U.S. Dist. LEXIS 2494 (N.D. Ill. Apr. 2, 1987).....................................2

*Central Mutual Insurance Company v. Kammerling*,
    212 Ill. App. 3d 744 (1st Dist. 1991) ......................................................................................7

*Edward Gray Corp. v. Nat'l Union Fire Ins. Co.*,
    No. 94 C 6992, 1997 U.S. Dist. LEXIS 2504 (N.D. Ill. Mar. 5, 1997) ...................................9

*Employers Insurance v. Ehlco Liquidating Trust*,
    186 Ill. 2d 127 (1999) .............................................................................................................7

*Maxum Indem. Co. v. Eclipse Mfg. Co.*,
    848 F. Supp. 871 (N.D. Ill. Jan. 31, 2012) ..............................................................................9

*Pekin Ins. Co. v. AAA-1 Masonry & Tuckpointing, Inc.*,
    2017 IL App (1st) 160200................................................................................................9, 10

*Pekin Insurance Co. v. Wilson*,
    237 Ill. 2d 446 (2010) ...........................................................................................................11

*Sentinel Ins. Co. v. Walsh Constr. Co.*,
    298 F. Supp. 3d 1165 (N.D. Ill. 2018) ................................................................................8, 9

*State Sec. Ins. Co. v. Burgos*,
    145 Ill. 2d 423 (1991) .............................................................................................................9

*Sterigenics, U.S., LLC v. Nat'l Union Fire Ins. Co.*,
    619 F. Supp. 3d 852 (N.D. Ill. 2022) ......................................................................................9

*Taco Bell Corp. v. Continental Cas. Co.*,
    388 F.3d 1069 (7th Cir. 2004) ................................................................................................8

*Tokio Marine Spec. Ins. Co. v. Altom Transp., Inc.*,
    618 F. Supp. 3d 791 (N.D. Ill. 2022) ......................................................................................2

**Statutes**

Maryland Workers' Compensation Act .........................................................................................3

Plaintiffs Tribune Publishing Company, LLC ("Tribune") and The Baltimore Sun Company, LLC ("Baltimore Sun"), are entitled to partial summary judgment against ACE American Insurance Company ("ACE") as to Count I of their First Amended Complaint. ACE acknowledged and accepted its duty to defend Plaintiffs against third-party suits, but never actually paid any of Plaintiffs' defense expenses. Straightforward application of controlling Illinois law to these undisputed facts compels entry of summary judgment that ACE breached its duty to defend.

Several employees of Plaintiffs were tragically injured or killed in a mass shooting in Annapolis, Maryland in June 2018, while working at their employers' office (the "Occurrence"). (Statement of Facts ("SOF"), ¶ 10.) Workers' compensation claims were made on behalf of several of the employees, naming Plaintiffs as their employers. (*Id.*, ¶¶ 11-12.) Nevertheless, tort suits subsequently were filed against Plaintiffs by the injured employees and representatives of deceased employees, who sought to avoid the preclusive effect of workers' compensation exclusivity law by alleging Plaintiffs were *not* their employers and asserting tort liability against Plaintiffs on premises liability grounds. (*Id.*, ¶ 24.)[1] The Employers' Liability coverage part of the Workers' Compensation/Employers' Liability policy issued by ACE and insuring Plaintiffs (the "WC/EL Policy") was designed to provide defense coverage for precisely this circumstance, where employees sue their employer in a different capacity. ACE knew Plaintiffs employed the shooting victims and was aware of the several workers' compensation claims made against Plaintiffs, as well as other facts demonstrating Plaintiffs were the claimants' employers. Based on its knowledge of this information, ACE properly concluded that Plaintiffs were (or at least potentially were) the claimants' employers and agreed to defend Plaintiffs under the EL coverage. (*Id.*, ¶¶ 30-4.) ACE's 30(b)(6) designee, Claims Director of Employers' Liability Carl Marshall,

---

[1] *Andrea Chamblee, et al. v. The Baltimore Sun Co., et al.* and *Beth Rittenour, et al. v. Bestgate Corporate Center, LLC, et al.*, Cons. Case No. C-02-CV-21-000820 (the "Underlying Suits").

testified ACE agreed to defend Plaintiffs based on true but unpleaded facts known to ACE. (*Id.*, ¶ 34, 42.)

Despite accepting its duty to defend both Plaintiffs against the underlying tort suits, ACE completely failed and refused to pay *any* of Plaintiffs' legal expenses. Instead, after the employees' tort cases were settled and Plaintiffs brought this action, ACE now seeks to escape its duty to defend on the ground that the claimants *alleged* Plaintiffs were not their employers. (*Id.*, ¶ 28.) But Illinois law does not permit ACE to abandon its admitted duty to defend, ignore true but unpleaded facts of which it was aware, and retroactively expunge its defense obligations *ab initio*.

Having accepted its duty to defend, ACE breached its duty as a matter of law by refusing to pay any defense expenses in the absence of any judicial declaration allowing it to withdraw from the defense and sitting on the sidelines while Plaintiffs funded their defense. ACE's belated complaints concerning the *amount* of Plaintiffs' reasonable defense expenses ACE was required to pay did not justify ACE paying nothing. Nor does the workers' compensation exclusion of the EL coverage part excuse ACE from its duty to defend, as ACE's 30(b)(6) designee admitted. (*Id.*, ¶¶ 54-55.) In the Underlying Suits, the employees sought tort damages from Plaintiffs based on their control of the property where the shooting occurred, not workers' compensation benefits. ACE's argument that workers' compensation exclusivity would doom the employees' tort claims is irrelevant. ACE agreed to defend Plaintiffs against even meritless suits, specifically including claims made by Plaintiffs' employees alleging their liability in a capacity other than as employer.

## **ARGUMENT**

Summary judgment is proper if the record evidence shows "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Tokio Marine Spec. Ins. Co. v. Altom Transp., Inc.*, 618 F. Supp. 3d 791 (N.D. Ill. 2022). The purpose of summary judgment is to eliminate trial where it is "unnecessary" and only results in "delay and

expense." *Burson-Marsteller, Inc. v. Tallgrass Tech. Corp.*, No. 85 C 5162, 1987 U.S. Dist. LEXIS 2494, at *4 (N.D. Ill. Apr. 2, 1987).

**I.   BY AGREEING TO DEFEND PLAINTIFFS, ACE HAD A DUTY TO DEFEND UNTIL IT OBTAINED A DECLARATION HOLDING OTHERWISE.**

   **A.   The WC/EL Policy.**

The WC/EL Policy has a workers' compensation coverage part, and an employer's liability coverage part (the "EL Coverage Part"). (SOF, ¶ 2.) The EL Coverage Part "applies to bodily injury by accident" including "resulting death," where the bodily injury "arise[s] out of and in the course of the injured employee's employment by you." (*Id.*, ¶ 3.) It requires ACE to pay all sums Plaintiffs legally must pay as damages because of bodily injury to Plaintiffs' employees, including those "claimed against [Plaintiffs] in a capacity other than as employer." (*Id.*, ¶ 4.) The EL Coverage Part also provides that ACE will "have the right and duty to defend, at [ACE's] expense, any claim, proceeding or suit against [Plaintiffs] for damages payable by this insurance," and gives ACE the right to "investigate such claims." (*Id.*, ¶ 5.)

   **B.   The Workers' Compensation Claims and Underlying Suits.**

After the Occurrence, several claimants filed for workers' compensation benefits, expressly seeking payments from both Tribune and Baltimore Sun as their employers for purposes of the Maryland Workers' Compensation Act. (*Id.*, ¶ 11.) These claimants received workers' compensation benefits payments before filing the Underlying Suits. (*Id.*, ¶¶ 13-15.) ACE was involved in the adjustment of and regularly received reports regarding these claims and was aware that these claimants received payments from Plaintiffs as the claimants' employer. (*Id.*)

The Underlying Suits alleged "bodily injury by accident," including "resulting death." (*Id.*, ¶¶ 22-23.) They sought damages "for care and loss of services," including for medical care, and loss of society, companionship, and marital care. (*Id.*) The Underlying Suits alleged Plaintiffs

3

were not employers of the underlying claimants, instead seeking damages for bodily injury "claimed against [Plaintiffs] in a capacity other than as employer," pursuing Plaintiffs for premises liability due to their "operation and/or control[] of" the office space where the shooting occurred, alleging Plaintiffs breached their duty of care to provide adequate security. (*Id.*, ¶ 24.) In summary judgment briefing, the underlying claimants also argued Plaintiffs were estopped from asserting a workers' compensation exclusivity defense based on their status as employers. (*Id.*, ¶ 25.)

### C. ACE Accepted and Confirmed Its Duty to Defend on Multiple Occasions.

When the Underlying Suits were filed, ACE already was aware that workers' compensation claims had been made on behalf of and paid to certain claimants by Plaintiffs. ACE's Marshall also requested and received from Plaintiffs W-2s for each of the claimants, reflecting that Baltimore Sun was their employer. (*Id.*, ¶¶ 30-34.) Marshall indicated that ACE was opening an EL coverage claim file for the Underlying Suits, even though the claimants did not allege Plaintiffs were their employers, because the "W2's received from the Tribune reflect that the Baltimore Sun…was the payroll employer of the injured workers." (*Id.*, ¶ 34.) Marshall's supervisor Eileen Gross, ACE's Executive Claim Director of Employers Liability, concluded ACE "owe[d] a duty to defend The [Baltimore] Sun" in the Underlying Suits. (*Id.*, ¶ 35.) On September 22, 2021, after Gross's approval (*id.*, ¶ 36), Marshall advised Plaintiffs: "We understand [claimants] were all employees of The Baltimore Sun," including an intern who "may be considered an employee." (*Id.*, ¶ 37.) ACE agreed "Baltimore Sun qualifies as an insured employer" under the WC/EL Policy, and ACE agreed to "defend it" in the Underlying Suits. (*Id.*, ¶ 38.)

At this time, ACE incorrectly concluded that Tribune did "not qualify as an insured employer," and refused to defend it against the Underlying Suits. (*Id.*, ¶ 39.) However, on January 28, 2022, ACE determined, based on its investigation (including information provided to ACE by Plaintiffs' insurance broker (*id.*, ¶ 40)), that the Underlying Suits potentially gave rise to coverage

4

for and triggered ACE's duty to defend Tribune under the EL Coverage Part:

> Your Companies have [] advised that the Tribune has final authority to select and hire employees…. The Injured Workers[']…benefits were provided by the Tribune…. We further understand that the Tribune retained final authority to fire employees assigned to the Capital [Gazette]…. According to your Companies,…Tribune had the right to control the work of the Injured Workers. Additionally, the Injured workers were required to follow the policies and procedures set forth in the Tribune employee handbook.

(*Id.*, ¶ 41.) ACE thus agreed Tribune "could be" the employer of the claimants and accepted its duty to defend Tribune. (*Id.*, ¶ 42.) On February 18, 2022, ACE's outside insurance coverage counsel reiterated and confirmed that ACE had "agreed to defend" both Baltimore Sun and Tribune under the EL Coverage Part. (*Id.*, ¶ 53.) On June 27, 2022, ACE's coverage counsel stated that ACE "agreed to share in the defense of [Baltimore] Sun and Tribune under the WC/EL Policy…based on information provided by your clients that the injured workers were employees of both…" (*Id.*, ¶ 66.) ACE thus stated several times its agreement to defend Plaintiffs under the EL Coverage Part. Prior to this lawsuit, as ACE's 30(b)(6) designee admitted, ACE never disputed or stated it was withdrawing from its duty to defend Plaintiffs. (*Id.*, ¶¶ 52, 69.) Despite being tendered millions of dollars of Plaintiffs' legal fees, ACE has paid nothing. (*Id.*, ¶¶ 48-50.)

    **D.**    **ACE Breached Its Duty to Defend.**

In *General Agents Insurance Co. of America v. Midwest Sporting Goods Co.*, an insurer agreed to defend its insured pursuant to a reservation of rights but subsequently obtained a judicial declaration that it had no duty to defend. 215 Ill. 2d 146, 149 (2005). The insurer then sought reimbursement of the defense costs it had paid to its insured because its reservation of rights letter purported to reserve "the right to recoup any defense costs paid in the event that it [was] determined that the [insurer] [did] not owe the Insured a defense." *Id.* The Illinois Supreme Court held the insurer was not entitled to reimbursement of the defense costs it had paid prior to the declaration, *id.* at 147-48, resting its judgment on the nature of the duty to defend, and explaining as follows:

5

> The problem with this argument is that [insurer] is attempting to define its duty to defend based upon the outcome of the declaratory judgment action. Although an insurer's duty to indemnify arises only after damages are fixed, the duty to defend arises as soon as damages are sought.… "[Insurer] remained obligated to defend [insured] so long as there remained any question as to whether the underlying claims were covered by the policies. Upon [judicial] determination that the claims against [insured] were…excluded from coverage, [insurer's] duty to defend [insured] in this action expired…. [Insurer] had a duty to defend [insured] until such determination was made…."

*Id.* at 165 (citing *Liberty Mut. Ins. Co. v. FAG Bearings Corp.*, 153 F.3d 919, 924 (8th Cir. 1998)). The court held that the insurer's agreement to defend revealed "some uncertainty concerning coverage," and that the duty to defend "continued until the trial court found [the insurer] did not owe…a defense." *Id.* at 165-66.

ACE plainly perceived "some uncertainty concerning coverage," as evidenced by its several acknowledgements of its duty to defend Plaintiffs. ACE's duty to defend continued until it obtained a judicial declaration holding otherwise – which it never did. *Id.* Because the Underlying Suits were settled and dismissed without ACE obtaining such a declaration, ACE cannot now retroactively extinguish the duty to defend it acknowledged. ACE is liable for all Plaintiffs' legal expenses in the Underlying Suits. A contrary result would put in ACE in a better position than the insurer in *General Agents*. If an insurer that defends under a reservation of rights and pays defense costs cannot be reimbursed what it paid when the claim is later held not to be covered, an insurer like ACE that acknowledges and accepts its duty to defend but then breaches that duty by never paying insureds' legal fees should not be rewarded for its failure to perform.

Long after being notified of the Underlying Suits and agreeing to defend Baltimore Sun, ACE belatedly raised several issues regarding Plaintiffs' entitlement to fully recover their legal fees. ACE asserted that (1) defense counsel's rates were too high and Plaintiffs unnecessarily engaged two law firms to defend the Underlying Suits, and (2) legal expenses had to be "allocated"

6

between the WC/EL Policy and a Commercial General Liability ("CGL") policy that ACE also issued to Plaintiffs. (SOF, ¶¶ 56-59.) These issues are irrelevant to whether ACE breached its duty to defend. Even if ACE were correct that Plaintiffs were not entitled to recover all of their legal expenses under the EL Coverage Part, there was still ***some amount*** of the expenses Plaintiffs were entitled to recover. ACE's refusal to pay ***any*** legal expenses is a breach of its duty to defend.

In *Employers Insurance v. Ehlco Liquidating Trust*, the court held the insurer breached its duty to defend by "fail[ing] to provide [the insured] a defense by reimbursing it for costs as they were incurred." 186 Ill. 2d 127, 155 (1999). The insurer's offer to pay 9% of the insured's defense costs did not satisfy its duty to defend, especially given that the insurer did not seek a declaration regarding its defense obligations until months after the underlying suit was concluded. *Id.* at 157.

In *Central Mutual Insurance Company v. Kammerling*, the insurer acknowledged its obligation to defend, but never defended its insured, and delayed seeking a declaratory judgment that it had no duty to defend. 212 Ill. App. 3d 744, 749 (1st Dist. 1991). The insurer argued that it had not breached its duty to defend because another one of the insured's carriers "agreed to the coordination of defense costs incurred on behalf of [the insured] but reserved its decision as to the actual apportionment of these costs." *Id.* The court rejected this argument, holding that "[t]he contract becomes no less breached because of the fortuitous existence of another insurer who is willing to meet its own obligations." *Id.* Because the insurer "sat on the sidelines" after acknowledging its duty to defend, and only belatedly sought a declaration that it had no duty to defend, the insurer had breached its duty to defend. *Id.*

ACE similarly breached its duty to defend. Although ACE accepted and acknowledged its duty to defend under the EL Coverage Part, it never paid any of Plaintiffs' defense fees or expenses, and instead "sat on the sidelines" while Plaintiffs funded their defense in its entirety. *Id.*

7

ACE's duty to defend "becomes no less breached" because of its contention that it was not required to fully reimburse Plaintiffs' defense costs because some portion of those costs was "unreasonable" or should be allocated or apportioned to ACE's CGL policy. Plaintiffs advised ACE that it owed Plaintiffs a complete defense for the Underlying Suits under the WC/EL Policy, regardless of the existence of the CGL Policy; Plaintiffs' excess insurer Travelers concurred; and ACE admitted as such internally, noting Plaintiffs' legal invoices had been submitted under the WC/EL Policy. (SOF ¶¶ 63, 73-79.) *Ehlco* and *Kammerling* apply with even more force here, where ACE repeatedly acknowledged its duty to defend but never paid any legal expenses, never sought a declaration it had no duty to defend, and waited until Plaintiffs sued to deny its defense obligations. Worse than the insurer in *Ehlco*, ACE never even offered to reimburse fees it did not dispute.

Accordingly, the court should reject any argument by ACE regarding reasonableness of defense costs or allocation to the CGL policy, as they are irrelevant to ACE's duty to defend. When an insurer breaches, the defense expenses paid by the insured are presumed to be reasonable. *Taco Bell Corp. v. Continental Cas. Co.*, 388 F.3d 1069, 1075-77 (7th Cir. 2004). Under *Ehlco* and *Kammerling*, a breaching insurer likewise forfeits and is estopped from asserting any right to "allocate" to other policies or pay only a portion of its insured's defense expenses.

II. **ACE HAD A DUTY TO DEFEND THE UNDERLYING SUITS IN ANY EVENT.**

Although it is irrelevant and unnecessary to establish ACE's breach of its duty to defend, if the Court retrospectively examines whether ACE had a duty to defend when the Underlying Suits were tendered to it, the result is the same – ACE had a duty to defend, which it breached. "The duty to defend is broader than the duty to indemnify because it arises when…the complaint contains allegations falling 'within or *potentially* with policy coverage…even if the allegations are groundless, false or fraudulent." *Sentinel Ins. Co. v. Walsh Constr. Co.*, 298 F. Supp. 3d 1165, 1170 (N.D. Ill. 2018) (citing *Gen. Agents*, 215 Ill. 2d at 155) (emphasis original). Insurers must

8

defend "unless it is *clear* from the face of the underlying complaint that [it] fail[s] to state facts which bring the case within, or potentially within," coverage. *Maxum Indem. Co. v. Eclipse Mfg. Co.*, 848 F. Supp. 871 (N.D. Ill. Jan. 31, 2012) (citing *U.S. Fid. & Guar. Co. v. Wilkin Insulation Co.*, 144 Ill. 2d 64, 73 (Ill. 1991)) (emphasis original). Courts must "resolve[] any doubts about the duty to defend and liberally construe[] policy terms and the underlying complaint's allegations in the insured's favor." *Sterigenics, U.S., LLC v. Nat'l Union Fire Ins. Co.*, 619 F. Supp. 3d 852, 860 (N.D. Ill. 2022). Any ambiguities are construed in favor of the insured, *Sentinel*, 298 F. Supp. 3d at 1171, and conditions, exclusions or exceptions are "most strictly construed against the insurer." *State Sec. Ins. Co. v. Burgos*, 145 Ill. 2d 423, 438 (1991).

Moreover, even if "the underlying complaint [may] not, on its face, trigger potential coverage," that "does not end [the] inquiry." *Edward Gray Corp. v. Nat'l Union Fire Ins. Co.*, No. 94 C 6992, 1997 U.S. Dist. LEXIS 2504, at *12 (N.D. Ill. Mar. 5, 1997). Under Illinois law, "the insurer is obligated to conduct the putative insured's defense ***if the insurer has knowledge of true but unpleaded facts***, which, when taken together with the complaint's allegations, ***indicate that the claim is within or potentially with the policy's coverage***." *Id.* (citing *Assoc. Indem. Co. v. Ins. Co. of N. Am.*, 68 Ill. App. 3d 807, 816 (1st Dist. 1979)) (emphasis added). If "the underlying complaint (and any true but unpleaded facts) fall within, or potentially within, the policy's coverage, the insurer's duty to defend arises." *AMCO Ins. Co. v. Northern Heritage Builders, LLC*, No. 11 C 575, 2011 U.S. Dist. LEXIS 145405, at *13 (N.D. Ill. Dec. 19, 2011) (citing *Am. States Ins. Co. v. Koloms*, 177 Ill.2d 473, 479 (1997)). "To hold otherwise would allow the insurer to construct a formal fortress of the third party's pleadings and to retreat behind its walls, thereby successfully ignoring true but unpleaded facts within its knowledge that require it, under the insurance policy, to conduct the putative insured's defense." *Pekin Ins. Co. v. AAA-1 Masonry &*

9

*Tuckpointing, Inc.*, 2017 IL App (1st) 160200, ¶ 28.

ACE was aware of facts demonstrating the underlying claimants were Plaintiffs' employees and that ACE had a duty to defend Plaintiffs in the Underlying Suits. ACE, however, breached its duty by never actually paying for Plaintiffs' defense, and has reversed its position and now denies it ever had a duty to defend because the claimants alleged in the Underlying Suits that Plaintiffs were not their employers. (ECF No. 25, ¶¶ 56-58, 72-80.) ACE's position is meritless and inconsistent with its 30(b)(6) designee's testimony. (SOF, ¶¶ 30-34, 39-42.) In *AAA-1 Masonry*, the court held the insurer's duty to defend was triggered based on its knowledge of true but unpleaded facts showing the claims potentially fell within its "additional insured" coverage provided to AAA-1, even though the underlying lawsuit did not allege facts establishing AAA-1's status triggering such "additional insured" coverage. 2017 IL App (1st) 160200, ¶¶ 28-29.

ACE's 30(b)(6) designee acknowledged ACE determined Plaintiffs were entitled to a defense based on true but unpleaded facts concerning their status as employers. (SOF, ¶¶ 30-34, 39-42.) ACE was aware before the Underlying Suits were filed that several underlying claimants had made workers' compensation filings asserting Plaintiffs were their employers. (*Id.*, ¶¶ 12-14.) After the Underlying Suits were filed, ACE learned additional facts demonstrating Plaintiffs' status as employers of all the underlying claimants. (*Id.*, ¶¶ 30-34, 39-42.) Based on these facts, ACE concluded Baltimore Sun "qualifies as an insured employer" (*Id.*, ¶ 38), and "Tribune could be determined to be [the] employer," and agreed to defend both Plaintiffs. (*Id.*, ¶ 42.) ACE had a duty to defend even though the Underlying Suits alleged Plaintiffs were not claimants' employers. Under Illinois law, ACE was required to provide a defense based on its knowledge of true but unpleaded facts it concluded revealed a potential for coverage under the EL Coverage Part.

Plaintiffs' defense to the Underlying Suits because they were employers of the claimants

10

likewise triggers ACE's duty to defend. In *Pekin Insurance Co. v. Wilson*, the insured was sued for assault and battery and tendered the lawsuit to its liability insurer, which sought a declaration it had no duty to defend because of an intentional-act exclusion to coverage. 237 Ill. 2d 446, 449, 451 (2010). But the policy had an exception to the intentional-act exclusion for self-defense, and the insured filed a counterclaim in the underlying suit alleging self-defense. *Id.*, at 451. The insurer argued the self-defense exception did not apply because the court could not consider the insured's counterclaim, but instead was limited "solely to the underlying complaint and the applicable policy provisions to determine whether there [was] a duty to defend." *Id.* at 456. The court rejected this argument, holding that it "appropriate to examine evidence beyond that contained in the underlying complaint in determining the duty to defend." *Id.*, at 462. The court explained there was "no possible reason" for the underlying complaint to "set forth allegations supporting a basis for defending [the] insured under [the policy's] self-defense exception." *Id.*, at 465. Thus, unless the insured was allowed to plead facts alleging self-defense, "there is no way for the self-defense exclusion to be triggered, and the coverage is illusory." *Id.* at 465-66. The court could "not find that the parties intended the coverage to be so construed," and held the insurer had a duty to defend. *Id.*, at 466. Here, because of workers' compensation exclusivity law, the underlying claimants had "no possible reason" to allege Plaintiffs were their employers. Indeed, they had every incentive to allege the contrary. Thus, unless Plaintiffs are allowed to submit facts outside the underlying complaints showing they were claimants' employers – which Plaintiffs did throughout the litigation (SOF, ¶¶ 30-34, 39-42) – there was no way for EL coverage "to be triggered, and the coverage is illusory." *Wilson*, 237 Ill. 2d at 455-56.

ACE concluded there was a potential for EL coverage and agreed to defend both Plaintiffs because the Underlying Suits (1) alleged bodily injury that ACE concluded based on true but

11

unpleaded facts occurred in the course of employment by Plaintiffs (SOF, ¶¶ 22-23, 30-34, 39-42); and (2) sought damages from Plaintiffs in a capacity other than as employer. (*Id.*, ¶ 24.) Having correctly agreed to defend, ACE breached that duty by refusing to pay Plaintiffs' defense expenses.

### III.     EXCLUSION 4 DOES NOT PRECLUDE ACE'S DUTY TO DEFEND.

Exclusion 4 of the EL Coverage Part excludes coverage for "[a]ny obligation imposed by a workers compensation…law." (*Id.*, ¶ 6.) ACE was aware of this exclusion when it accepted its duty to defend Plaintiffs and agreed to defend. (*Id.*, ¶¶ 54-55, 66-67.) ACE now has changed position, arguing it never had a duty to defend because the underlying claimants could receive workers' compensation benefits and eight claimants received such benefits "in connection with the bodily injury allegations and damages" sought in the Underlying Suits. (ECF No. 25, ¶ 83.) ACE also suggests Plaintiffs' assertion of a workers' compensation exclusivity defense is an admission Exclusion 4 applied to bar coverage. (*Id.*, ¶ 84.) ACE's argument fails for three reasons.

**First**, Exclusion 4 only bars coverage for obligations imposed by a workers' compensation law. (SOF, ¶ 6.) By its express terms Exclusion 4 does not apply to the Underlying Suits, which did not seek damages based on any obligation imposed by a workers' compensation law – they were negligence actions seeking tort damages. At a minimum, Exclusion 4 is ambiguous in this context and does not preclude a duty to defend. *Ionbond, Inc. v. Valley Forge Ins. Co.,* No. A-3370-09T4, 2010 N.J. Super. Unpub. LEXIS 2905, at *9-10 (N.J. Super. Nov. 17, 2010). Indeed, ACE agreed to defend Plaintiffs despite asserting that Exclusion 4 could ultimately bar indemnity coverage. (SOF, ¶¶ 54-55, 66-67.) Exclusions are "most strictly construed against the insurer," so a broader reading of Exclusion 4 would be inappropriate. *Burgos*, 145 Ill. 2d at 438.

**Second**, the claims in the Underlying Suits seeking tort damages triggered ACE's duty to defend even if they ultimately were likely to fail. *Illinois Tool Works Inc. v. Travelers Cas, & Sur. Co.*, 2015 IL App (1st) 132350, ¶¶ 1, 4 (insurer must defend even though it is "clear from the

12

record" that insured was "unlikely to actually be found liable" in underlying suits). In *American Interstate Insurance Company v. Coastal Transportation Company*, an injured employee's wife asserted negligence claims against her husband's employer, seeking damages for injuries she suffered arising from his being injured in the course of his employment. No. SA-07-CA-770-OG, 2008 U.S. Dist. LEXIS 127650, at *2-3 (W.D. Tex. June 27, 2008). The insured had EL coverage virtually identical to the ACE EL Coverage Part. *Id.* at *3-5. The court rejected the same argument ACE makes here, that it had no duty to defend because the tort claims were "barred by" workers' compensation exclusivity, reasoning that the insured "bargained for a defense of both meritorious and meritless suits when it purchased the policy," so the insurer "assumed the duty to defend [the insured] against [the] suit whether it is ultimately determined to have merit or not." *Id.* at *10.

Moreover, the Underlying Suits asserted claims seeking damages against Plaintiffs in a capacity other than as employer, alleging Plaintiffs were liable in tort because Plaintiffs controlled security at the office premises and breached a duty to provide adequate security. (*Id.*, ¶ 24.) The EL Coverage Part expressly covers claims brought against Plaintiffs in capacities other than as employers (*id.*, ¶ 4), and the claims seeking those damages were potentially covered and triggered ACE's duty to defend. In *Industrial Door Company v. Builders Group*, an employee was injured and received workers' compensation benefits, but brought a tort suit against his employer, Industrial Door, claiming (1) he was not an employee of Industrial Door, and (2) Industrial Door designed and manufactured the machine that injured him. No. A09-2065, 2010 Minn. App. Unpub. LEXIS 745, at *2 (July 27, 2010). Industrial Door asserted a workers' compensation exclusivity defense. *Id.*, at *3. The district court dismissed the claims against Industrial Door in its capacity as employer, but not the claims against Industrial Door in its alleged role as designer or manufacturer. *Id.* The appellate court affirmed because Industrial Door "could still be liable in

13

a tort action by an employee" in a capacity other than as employer. *Id.* at *3-4.

Industrial Door sued its WC/EL insurer, which had failed to provide a defense. *Id.*, at *3, *5. The EL coverage in the policy "specifie[d] that '[t]he damages we will pay, where recovery is permitted by law, include damages:…claimed against you in a capacity other than as employer," and excluded coverage for obligations imposed by workers' compensation law. *Id.* at *10. The insurer argued the phrase "where recovery is permitted by law" precluded its duty to defend because Minnesota law did not allow recovery in tort by an employee against its employer. *Id.* at *10. The court rejected this argument because it "confuses arguable *coverage* under [the] policy with arguable *recovery* under [the] policy." *Id.* (emphasis original.) The phrase "where recovery is permitted by law," the court held, "cannot function as a test of the merits of the claim." *Id.*, at *10-11. The court concluded that although a dual capacity exception to workers' compensation exclusivity likely was not viable, the case "could have presented the courts with an opportunity to adopt the theory in Minnesota." *Id.* at *11-12. The court held it would be inappropriate to allow "the insurer to prejudge the merits of the claim and determine its duty to defend accordingly." *Id.*, at *12; *see also Ionbond,* No. A-3370-09T4, 2010 N.J. Super. Unpub. LEXIS 2905, at *9-10 (EL coverage provision for claims made against insured in capacity other than as employer was ambiguous and could be read as obligating insurer to provide defense for "dual capacity" tort claim, regardless of ultimate merits of the action").

Here, ACE's belief that Plaintiffs' workers' compensation exclusivity defense was certain to prevail is irrelevant. The claimants sought damages due to bodily injury or death and argued against workers' compensation exclusivity because Plaintiffs were liable in capacities other than as their employers. ACE's 30(b)(6) designee admitted that claimants were suing Plaintiffs in a capacity other than as employers. (SOF, ¶ 24.) Because the underlying claimants potentially could

14

avoid Plaintiffs' workers' compensation exclusivity defense, ACE had a duty to defend irrespective of whether the Underlying Suits had merit in the face of Plaintiffs' defense. The viability of that defense and the potential applicability of Exclusion 4 were irrelevant, because ACE cannot "prejudge the merits of the claim and determine its duty to defend accordingly." *Id.* at \*12. ACE's 30(b)(6) designee agreed that Plaintiffs' exclusivity defense and the potential applicability of Exclusion 4 "didn't preclude [ACE] from agreeing to defend." (SOF, ¶ 67.)

**Third,** although ACE asserts that if Plaintiffs succeeded in proving in the Underlying Suits that they in fact were employers of the underlying claimants, workers' compensation exclusivity applied and Exclusion 4 barred coverage, but ACE is wrong as a matter of fact. (ECF No. 25, ¶¶ 81, 85.) The claimants argued (as ACE was aware) that workers' compensation exclusivity was inapplicable even if Plaintiffs were their employer, asserting Plaintiffs were estopped from asserting exclusivity because Plaintiffs purportedly had taken an inconsistent position in a different lawsuit and prevailed. (SOF, ¶¶ 25-26.) If claimants' arguments had succeeded, Plaintiffs may have been precluded from asserting workers' compensation exclusivity even if Plaintiffs as a matter of fact were determined to be employers, as ACE's 30(b)(6) designee conceded. (*Id.*, ¶ 27.)

Further, the claimants argued that Baltimore Sun, as the corporate parent of the Capital Gazette, and Tribune, as the corporate parent of Baltimore Sun, could not "disregard or disown their own corporate separateness and have workers' compensation exclusivity apply up and down the corporate structure." (*Id.*, ¶ 25.) The claimants thus argued Plaintiffs could not "have it both ways" by relying on corporate separateness when it benefitted them but ignoring their separate identities "when sued by an injured employee." (*Id.*) Had these arguments succeeded, Plaintiffs may have been liable in tort for duties not imposed by workers' compensation law, despite their actual status as employers, rendering Exclusion 4 inapplicable. ACE's Marshall agreed claimants

15

"appear[ed] to be trying to defeat the workers compensation exclusivity defense." (*Id.*, ¶ 27.)

| | |
|---|---|
| Dated: August 29, 2023 | Respectfully submitted, |

*s/ John D. Shugrue*
John D. Shugrue
John S. Vishneski
Reed Smith LLP
10 S. Wacker Dr., Suite 4000
Chicago, IL 60606
(312) 207-1000
jshugrue@reedsmith.com
jvishneski@reedsmith.com

*Counsel for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 29, 2023 a true and correct copy of the foregoing was filed with the Clerk of Court using the CM/ECF system, which sends notice to the following:

Joseph A. Hinkhouse
Richard A. Hodyl
Hinkhouse, Williams & Walsh, LLP
180 N. Stetson Ave., Suite 3400
Chicago, IL 60601
(312) 784-5443
(312) 784-5454
jhinkhouse@hww-law.com
rhodyl@hww-law.com

*Counsel for ACE American Insurance Company*

*/s/ John D. Shugrue*