**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

TRIBUNE PUBLISHING COMPANY, LLC )
and THE BALTIMORE SUN COMPANY, )
LLC, )
                                )
           Plaintiffs, )
                                )
v.                                 )
                                )
ACE AMERICAN INSURANCE )
COMPANY, )
                                )
           Defendant.

Case No. 22-cv-7327

Hon. Matthew F. Kennelly

**<u>PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION FOR PARTIAL SUMMARY
JUDGMENT ON COUNT I OF THEIR FIRST AMENDED COMPLAINT AGAINST
ACE AMERICAN INSURANCE COMPANY</u>**

# TABLE OF CONTENTS

**Page**

I.     ACE Admits It Breached Its Duty to Defend Under the EL Coverage Part...................... 1

II.    ACE's EL Coverage Position Letters Created a Conflict of Interest Entitling Plaintiffs to Independent Counsel and Precluding ACE from Controlling the Defense. ........................................................................................................... 3

        A.    THE UNDISPUTED FACTS SHOW ACE CREATED CONFLICTS OF INTEREST WITH PLAINTIFFS. ........................................................... 4

        B.    PLAINTIFFS DID NOT VIOLATE ACE'S ALLEGED RIGHT TO CONTROL THE DEFENSE OR BREACH THE EL COVERAGE PART'S VOLUNTARY PAYMENTS OR COOPERATION CLAUSES........... 9

        C.    ACE NEVER ATTEMPTED TO BE INVOLVED IN OR EXERCISE CONTROL OF THE DEFENSE. ....................................................... 11

        D.    EVEN IF PLAINTIFFS FAILED TO COOPERATE, ACE WAS NOT SUBSTANTIALLY PREJUDICED........................................................ 12

III.   ACE's CGL Allocation Argument Is Irrelevant and Meritless. ...................................... 13

IV.   ACE's Damages Arguments Are Irrelevant to ACE's Breach of Its Duty to Defend........................................................................................................................ 14

V.    ACE Is Estopped from Asserting Coverage Defenses...................................................... 15

VI.   The Doctrine of Unclean Hands Does Not Apply Here. .................................................. 15

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Am. Safety Cas. Ins. Co. v. City of Waukegan*,
678 F.3d 475 (7th Cir. 2012) .................................................15

*AMCO Ins. Co. v. N. Heritage Builders, LLC*,
No. 11 C 575, 2011 U.S. Dist. LEXIS 145405 (N.D. Ill. Dec. 19, 2011) ................................3

*BASF AG v. Great Am. Assur. Co.*,
No. 04 C 6969, 2006 U.S. Dist. LEXIS 76035 (N.D. Ill. Oct. 3, 2006) ...........................13, 15

*BellSouth Telecomms., Inc. v. Church & Tower of Fla., Inc.*,
930 So. 2d 668 (Fla. Dist. Ct. App. 2006) ...............................8

*Bernstein v. Genesis Ins. Co.*,
No. 98 C 5446, 1999 U.S. Dist. LEXIS 12292, . (N.D. Ill. July 28, 1999) ...........................12

*Builders Concrete Services, LLC. v. Westfield National Insurance Co.*,
486 F. Supp. 3d 1225 (N.D. Ill. 2020) ...............................10, 11

*Caulfield v. Packer Eng'g, Inc.*,
2016 IL App (1st) 151329-U ...............................14

*Chi. Hosp. Risk Pooling Program v. Ill. Med. Inter-Ins. Exch.*,
325 Ill. App. 3d 970 (1st Dist. 2001) ...............................9, 14

*CMK Dev. Corp. v. West Bend Mut. Ins. Co.*,
395 Ill. App. 3d 830 (1st Dist. 2009) ...............................15

*Cont'l Cas. Co. v. N. Am. Capacity Ins.*
Co., No. H-05-3252, 2008 U.S. Dist. LEXIS 139046 (S.D. Tex. Aug. 29, 2008) ...............................14

*Country Mut. Ins. Co. v. Under Constr. & Remodeling, Inc.*,
2021 IL App (1st) 210600...............................12

*Edward Gray Corp. v. Nat'l Union Fire Ins. Co.*,
No. 94 C 6992, 1997 U.S. Dist. LEXIS 2504 (N.D. Ill. Mar. 5, 1997) ...................................2

*Employers. Ins. of Wausau v. Ehlco Liquidating Tr.*,
186 Ill. 2d 127 (1999) ...............................15

*Fed. Ins. Co. v. Firemen's Ins. Co.*,
769 F. Supp. 2d 865 (D. Md. 2011)...............................14

*General Agents Ins. Co. of Am. v. Midwest Sporting Goods Co.*,
  215 Ill. 2d 146 (2005) ....................................................................................................1

*Hartford Cas. Ins. Co. v. J.R. Marketing, L.L.C.*,
  216 Cal. App. 4th 1444 (2013) ........................................................................................9

*Hartford Cas. Ins. Co. v. Nat'l Union Fire Ins. Co.*,
  No. 19-cv-06349-RS, 2020 U.S. Dist. LEXIS 251356 (N.D. Cal. Nov. 24,
  2020) ...............................................................................................................................14

*Ill. Masonic Med. Center v. Turegum Ins. Co.*,
  168 Ill. App. 3d 158 (1st Dist. 1988) ..........................................................................4, 6, 10

*Jackson v. Humana*,
  No. 18-cv-02413, 2022 U.S. Dist. LEXIS 112905 (N.D. Ill. June 27, 2022)..........................2

*Korte Constr. Co. v. Am. States Ins.*,
  322 Ill. App. 3d 451 (5th Dist. 2001)...............................................................................13

*Krutsinger v. Ill. Cas. Co.*,
  10 Ill. 2d 518 (1957) .........................................................................................................6

*La Rotunda v. Royal Globe Ins. Co.*,
  87 Ill. App. 3d 446 (1st Dist. 1980) ..........................................................................2, 6, 8, 9

*Magnetek, Inc. v. The Travelers Indem. Co.*,
  No. 17 C 3173, 2019 U.S. Dist. LEXIS 115231 (N.D. Ill. July 11, 2019) ............................12

*MCI WorldCom Network Servs., Inc. v. Atlas Excavating, Inc.*,
  No. 02 C 4394, 2006 U.S. Dist. LEXIS 88956 (N.D. Ill. Dec. 6, 2006) ..................................2

*Md. Cas. Co. v. State Farm Mut. Auto. Ins. Co.*,
  419 P.2d 229 (N.M. 1966) ...............................................................................................14

*Meridian Sec. Ins. Co. v. Roberts*,
  526 F. Supp. 3d 352 (S.D. Ill. 2021)................................................................................15

*Murphy v. Urso*,
  88 Ill. 2d 444 (1981) ..........................................................................................................5

*Nandorf, Inc. v. CNA Ins. Cos.*,
  134 Ill. App. 3d 134 (1st Dist. 1985) .........................................................................4, 10, 11

*National Forge Casualty Co. v. Forge Industrial Staffing, Inc.*,
  567 F.3d 871 (7th Cir. 2009) ........................................................................................10, 11

*Pekin v. Wilson*,
  237 Ill. 2d 446 (2010) ......................................................................................................10

*R.C. Wegman Constr. Co. v. Admiral Ins. Co.*,
   629 F.3d 724 (7th Cir. 2011) ................................................................6

*Scheiber v. Dolby Labs., Inc.*,
   293 F.3d 1014 (7th Cir. 2002) ............................................................15

*Taco Bell v. Cont'l Cas. Co.*,
   388 F.3d 1069 (7th Cir. 2004) ............................................................15

*Travelers Indem. Co. v. Centex Homes*,
   No. 11-CV-03638-SC, 2015 U.S. Dist. LEXIS 137898 (N.D. Cal. Oct. 7,
   2015) ....................................................................................................8

*Utica Mut. Ins. Co. v. David Agency Ins., Inc.*,
   327 F. Supp. 2d 922 (N.D. Ill. 2004) ...................................... *passim*

*Wolverine WorldWide, Inc. v. Am. Ins. Co*.,
   No. 19-cv-10, 2021 U.S. Dist LEXIS 199675 (W.D. Mich. Oct. 18, 2021)...................13, 15

*Yowell v. Seneca Specialty Ins. Co.*,
   117 F. Supp. 3d 904 (E.D. Tex. 2015) ..................................................8

**Statutes**

215 ILCS 5/154.6.................................................................................14

ACE's opposition to Plaintiffs' Motion relies on the false premise that there was no conflict of interest giving Plaintiffs the right to select counsel and control their defense of the Underlying Suits. ACE's position is based on revisionist history that ignores the fact that its reservations of rights and denials under its EL coverage in September 2021 and denial of CGL coverage by not timely responding to Plaintiffs' tender of the Suits (and later denying CGL coverage), created a conflict entitling Plaintiffs to choose counsel and control their defense. ACE thus had no right subsequently to select counsel or direct Plaintiffs' defense. As such, based on facts admitted by ACE, Plaintiffs are entitled to judgment as a matter of law that ACE breached its duty to defend.

## I. ACE Admits It Breached Its Duty to Defend Under the EL Coverage Part.

ACE admits the material facts establishing Plaintiffs' entitlement to summary judgment as to ACE's breach of its duty to defend. ACE admits: (1) it agreed to defend Plaintiffs under the EL coverage of the WC/EL Policy (ACE Response to Plaintiffs' SOF ("SOF Resp."), ¶¶ 38, 42); (2) it never sought a declaration of no coverage (*id.*, ¶ 52); (3) Plaintiffs tendered defense costs to ACE for payment (*id.*, ¶¶ 48-49); and (4) ACE has not paid any defense costs (*id.*, ¶ 50). These admissions establish ACE had a duty to defend that it breached by failing to pay Plaintiffs' defense costs. Because ACE agreed to defend Plaintiffs, ACE had a continuing duty to defend until it obtained a judicial declaration of no coverage, which it never did. *General Agents Ins. Co. of Am. v. Midwest Sporting Goods Co.*, 215 Ill. 2d 146, 149 (2005). Seeking refuge in semantical gamesmanship, ACE denies it "accepted" a "duty" to defend, and claims it "simply agree[d] to defend." (SOF Resp., ¶¶ 35, 52.) This is a distinction without a difference. In *General Agents*, the court held the insurer had a continuing duty to defend where the insurer stated it "agree[d]" to defend the insured. 215 Ill. 2d at 148. ACE's September 2021 EL coverage letter agreeing to defend Baltimore Sun expressly referenced the EL coverage part's duty to defend. (*Id.*, ¶ 37, Barrios Decl., ¶ 2, **Ex. A**, Marshall Dep., Ex. 15, at TRIBUNE_0005669.) Internal ACE

communications predating that letter reflect and confirm ACE's recognition of a "***duty to defend***" Baltimore Sun against the Underlying Suits (Plaintiffs' SOF, ¶ 35), as ACE's corporate designee conceded.  (*Id.*)  ACE's claim it did not recognize its EL "duty" to defend is sheer sophistry, and at odds with its assertion it was deprived of its "right" to defend, as there is no such "right" absent a "duty" to defend.  *La Rotunda v. Royal Globe Ins. Co.*, 87 Ill. App. 3d 446, 456 (1st Dist. 1980).

Ultimately, ACE does not dispute Plaintiffs' argument that it had a continuing duty to defend after agreeing to defend, thereby conceding this important point.  "[A] party's failure to respond to an opposing party's argument implies concession." *MCI WorldCom Network Servs., Inc. v. Atlas Excavating, Inc.,* No. 02 C 4394, 2006 U.S. Dist. LEXIS 88956, at *9-10 (N.D. Ill. Dec. 6, 2006).  ACE's failure to address this argument compels summary judgment in Plaintiffs' favor that ACE breached its duty to defend under the EL coverage.  *Jackson v. Humana*, No. 18-cv-02413, 2022 U.S. Dist. LEXIS 112905, at *25 (N.D. Ill. June 27, 2022).

ACE also admits that: (1) before the Underlying Suits were filed, it reviewed workers' compensation ("WC") filings identifying both Tribune and Baltimore Sun as the employers of various underlying claimants (SOF Resp., ¶ 12); (2) after the Underlying Suits were filed, ACE received W-2s reflecting Baltimore Sun was the employer of all the claimants, and therefore agreed to defend Baltimore Sun under the EL coverage (*id.*, ¶¶ 33-34, 37); and (3) ACE later received information showing Tribune also was an employer of the claimants, and then also agreed to defend Tribune under the EL coverage (*id.*, ¶¶ 40-42).  ACE's corporate designee admitted ACE agreed to defend based on these unpleaded facts known to ACE concerning Plaintiffs' employer status.  (*Id.*, ¶¶ 34, 42.)  Insurers must defend where, as here, they know "of true but unpleaded facts, which, when taken together with the complaint's allegations, indicate that the claim is within or potentially within the policy's coverage." *Edward Gray Corp. v. Nat'l Union Fire Ins. Co.*, No.

2

94 C 6992, 1997 U.S. Dist. LEXIS 2504, at *12 (N.D. Ill. Mar. 5, 1997). ACE's admissions establish ACE was aware of true but unpleaded facts demonstrating Plaintiffs were (or potentially were) employers of the claimants, so the Underlying Suits fell "potentially within[] the [EL] coverage," triggering ACE's duty to defend. *AMCO Ins. Co. v. N. Heritage Builders, LLC*, No. 11 C 575, 2011 U.S. Dist. LEXIS 145405, at *13 (N.D. Ill. Dec. 19, 2011).

ACE's Counterclaim asserted Exclusion 4 for "[a]ny obligation imposed by a [WC] law" bars EL coverage because some underlying claimants received WC benefits (ECF No. 25, ¶ 83), and that if Plaintiffs were employers, WC exclusivity applied and Exclusion 4 barred coverage. (*Id.*, ¶¶ 81, 85.) ACE, however, does not even attempt to rebut Plaintiffs' argument that Exclusion 4's express terms and the pertinent case law establish Exclusion 4 does not apply to employee suits like the Underlying Suits, seeking tort damages, even where the employees received WC benefits. Moreover, ACE admits: (1) it knew underlying claimants argued WC exclusivity was inapplicable even if Plaintiffs were employers (SOF Resp., ¶¶ 25-26); and (2) those arguments may have been viable, exposing Plaintiffs to tort damages (*id.*, ¶ 27). ACE even accepts that "EL coverage would apply" if "an employment…claim" avoided exclusivity. (Opp. at 10.) ACE thus admits Plaintiffs faced exposure for tort damages not imposed by WC law, despite being employers. Exclusion 4 thus is irrelevant to ACE's duty to defend. ACE does not dispute, and thus concedes this point, and Plaintiffs are entitled to summary judgment that ACE breached its EL duty to defend.

## II.   ACE's EL Coverage Position Letters Created a Conflict of Interest Entitling Plaintiffs to Independent Counsel and Precluding ACE from Controlling the Defense.

ACE incorrectly argues Plaintiffs violated ACE's "right" to control the defense and breached the EL coverage voluntary payments and cooperation clauses by claiming a conflict of interest existed between Plaintiffs and ACE that entitled Plaintiffs to independent counsel. (Opp. at 6-7.) ACE also falsely claims there was no "scenario" in which coverage for Plaintiffs would

have been completely and irreparably eliminated, such that no conflict existed. (*Id.* at 10.)

**A.    The Undisputed Facts Show ACE Created Conflicts of Interest with Plaintiffs.**

In the Underlying Suits, a crucial issue was whether Plaintiffs were employers entitled to WC exclusivity. Plaintiffs contended that because they were employers of the claimants, WC exclusivity applied to defeat the alleged tort claims. (SOF Resp., ¶ 29.) The claimants sought to avoid WC exclusivity by alleging Plaintiffs were not their employers, or were liable in some capacity other than employer. (*Id.*, ¶¶ 17-18, 24-25.) ACE asserted that if Plaintiffs were found not to be employers, they were not entitled to EL coverage. ACE's coverage position created a paradigm conflict of interest between Plaintiffs and ACE. ACE had an incentive to defend the employer status issue "less than vigorously," because a ruling that Plaintiffs were not employers would have relieved ACE of the defense it accepted under the EL coverage. *Utica Mut. Ins. Co. v. David Agency Ins., Inc.*, 327 F. Supp. 2d 922, 928 (N.D. Ill. 2004) (conflict arises where insured and insurer are complete adversaries on crucial issue and insurer would benefit by providing less-than-vigorous defense); *Ill. Masonic Med. Center v. Turegum Ins. Co.*, 168 Ill. App. 3d 158, 163 (1st Dist. 1988) (same); *Nandorf, Inc. v. CNA Ins. Cos.*, 134 Ill. App. 3d 134, 138 (1st Dist. 1985) (conflict existed where insurer's reservation of rights gave it an interest in "providing a less-than-vigorous defense"). This conflict entitled Plaintiffs to independent counsel of their choice, paid for by ACE, who would be loyal solely to Plaintiffs. *David Agency*, 327 F. Supp. 2d at 929.

ACE attempts to obscure and evade the conflict its reservation of rights caused by revising the history of this claim to fit its narrative, but the true chronology reveals the fatal flaws of ACE's argument. Plaintiffs notified ACE of the Annapolis shooting occurrence in July 2018. Shortly thereafter, on July 11, 2018, ACE closed its CGL file on the basis that the CGL Policy is a "no-risk transfer" policy. (SOF Resp., ¶ 47.) Almost 3 months after receiving notice of the Underlying Suits, ACE issued an EL coverage letter on September 22, 2021, recognizing its duty to defend

4

Baltimore Sun because facts known to ACE indicated it was the claimants' employer, but reserving rights to deny coverage if the Sun was held not to be the claimants' employer; and refusing to defend and denying coverage to Tribune based on the incorrect assertion it was not the claimants' employer. (SOF Resp., ¶ 37-39.) When ACE sent its September 2021 EL letter, there was no indication that ACE was accepting a duty to defend Baltimore Sun under the CGL Policy, nor did it even provide a CGL coverage position. Seven months after the Underlying Suits were filed, on January 28, 2022, ACE agreed to defend Tribune under the EL coverage and provided a CGL coverage position. (*Id.*, ¶¶ 41-45.) It was only in January 2022 that ACE assigned a CGL adjuster to the claim involving the Underlying Suits. (Plaintiffs' Resp. to ACE SOF, ¶ 8.)

ACE makes the meritless argument that a conflict of interest did not exist because no matter the outcome, Plaintiffs had EL or CGL coverage, so there was no scenario under which "coverage would be ***completely and irreparably eliminated*** under its comprehensive insurance program." (Opp. at 9.) ACE ignores the undisputed fact that when it sent its September 2021 EL coverage letter, ACE had denied EL coverage for Tribune, and had not addressed, let alone agreed to provide, CGL coverage for the Underlying Suits. ACE's reservation of rights to deny EL coverage based on a ruling that Baltimore Sun was not an employer thus would have "completely and irreparably eliminated" the only coverage ACE agreed to provide Baltimore Sun – the EL coverage. This conflict gave Baltimore Sun the right to independent counsel at that time. ACE's September 2021 EL letter also created a conflict entitling Baltimore Sun to independent counsel because counsel appointed by ACE would have had an incentive to shift all liability to Tribune, for which ACE had denied EL coverage, by seeking a ruling that Tribune was not an employer. This would have rendered Tribune liable for uncovered damages, financially benefitting ACE. *E.g.*, *Murphy v. Urso*, 88 Ill. 2d 444, 453 (1981) (conflict existed where insurer of two insureds

5

had interest in "placing all the blame" on one insured "so that he would bear the entire liability").

As for Tribune, ACE denied EL coverage in September 2021, and did not indicate it would provide a CGL defense, so Tribune plainly had the right to select counsel of its choice and defend itself. *La Rotunda*, 87 Ill. App. 3d at 456 ("[b]y denying coverage, [insurer] waived its right to control the litigation"). It is crucial that an insurer promptly advise whether it will defend – particularly where, as here, the insurer "assert[s] its nonliability" – so the insured can take action to protect itself. *Krutsinger v. Ill. Cas. Co.*, 10 Ill. 2d 518, 526 (1957). It is beyond dispute that ACE could not select counsel for and control Tribune's defense as of September 2021, or over the following 4 months, because it did not agree to provide Tribune with a defense under the EL coverage until January 28, 2022. Tribune had an absolute right to defend itself with counsel of its choice during the 7 months after the Underlying Suits were filed until January 2022, because ACE had (1) denied EL coverage for Tribune and (2) completely ignored the CGL Policy.

On January 28, 2022, ACE changed its position and agreed to provide EL defense coverage for Tribune, but reserved its right to deny coverage if Tribune was ruled not to be an employer. This created a conflict between Tribune and ACE because, as with the Baltimore Sun, ACE had an incentive to defend Tribune's employer status issue "less than vigorously." *Turegum*, 168 Ill. App. 3d at 163; *David Agency*, 327 F. Supp. 2d at 928. The January 2022, EL coverage letter also cemented ACE's conflict with the Baltimore Sun, as ACE again reserved its rights to deny coverage if it was ruled not to be an employer. ACE's "duty of good faith require[d] it to notify" Plaintiffs of all of the above-outlined conflicts, but ACE said nothing. *R.C. Wegman Constr. Co. v. Admiral Ins. Co.*, 629 F.3d 724, 729 (7th Cir. 2011); *David Agency*, 327 F. Supp. 2d at 929-30.

ACE also sent its first CGL coverage letter concerning the Underlying Suits on January 28, 2022, advising that "the loss may not be covered due to the Employer's Liability Exclusion" in the

6

CGL Policy, and expressly stating: "***Nothing contained in this letter…should be construed as an admission of coverage***." (Plaintiffs' SOF, ¶ 44, Barrios Decl., ¶ 2, **Ex. A**, Marshall Dep., Ex. 50, at ACE_0001312.) ACE plainly did not accept a CGL duty to defend by way of this letter, which does not state that ACE is "agreeing to defend" and instead contains the disclaimer that it should not in any way be construed as an admission of coverage. Ironically, ACE argues its EL letters ***agreeing to defend were not an acceptance*** of a duty to defend, but its CGL letter stating it is ***not an admission of coverage*** was an ***acceptance*** of its duty. Even applying ACE's asserted standard that conflicts exist ***only*** if coverage can be "completely and irreparably eliminated," as of January 28, 2022, a conflict between Plaintiffs and ACE existed entitling Plaintiffs to independent counsel because a ruling that Plaintiffs were not employers would have "completely and irreparably eliminated" the only coverage ACE agreed to provide, the EL coverage.

On February 18, 2022, ACE's coverage counsel, Kristen Perkins, falsely stated ACE had agreed to defend Plaintiffs under the CGL Policy. (SOF Resp., ¶ 57.) Perkins' letter did not affect the already existing conflicts for multiple reasons. ***First***, her letter was based on the false premise that ACE had previously accepted a CGL duty to defend, which does not undo the conflicts ACE had already created between itself and Plaintiffs. Perkins' assertion was simply revisionist history with the goal of allocating defense costs to the CGL Policy so that Plaintiffs would be compelled to pay them instead of ACE. (Plaintiffs' Resp. to ACE SOF, ¶ 8.)

***Second***, even if Perkins' letter somehow could undo the existing conflicts, ACE still could not appoint counsel and control the defense because it had breached any duty to defend it may have had under the CGL Policy by the time she sent the letter. The CGL Policy imposes on ACE a duty to defend against "suits" seeking damages for "bodily injury." (ECF No. 48-3, at TRIBUNE_0001222.) Although the CGL Policy is a "matching deductible" policy where

Plaintiffs reimburse ACE for all defense costs, the Deductible Endorsement states that ACE's duty to defend remains unchanged. (*Id.*, at TRIBUNE_0001277-78.) ACE's expert Charles Ehrlich concedes: "ACE is fully responsible for the cost of defending suits…up to the policy limit in the first instance," and "ACE then has to seek reimbursement from [Plaintiffs] for the deductible." (Plaintiffs' Resp. to ACE SOF, ¶ 9.) Because ACE failed to accept and perform any "duty" to defend it may have had under the CGL Policy, ACE forfeited any "right" to control the defense. *La Rotunda*, 87 Ill. App. 3d at 456.

It bears noting that Plaintiffs' right to independent counsel was never an issue until Perkins sent her February 2022, letter advising that ACE would not agree to reimburse Plaintiffs for ***any*** defense costs incurred by one of their defense firms (Hinckley Allen) and threatening to replace their other defense firm (Kramon & Graham) if it refused to agree to ACE's reduced panel counsel billing rates. Incredibly, ACE already had acknowledged Plaintiffs' engagement of Hinckley Allen in both of its EL coverage letters prior to Perkins' statement that ACE would not reimburse any of Hinckley Allen's fees. (Plaintiffs' SOF, ¶¶ 37, 41, Barrios Decl., ¶ 2, **Ex. A**, Marshall Dep., Ex. 15, at TRIBUNE_0005670, and Ex. 11, at TRIBUNE_0000348; Ex. 15.) After ignoring CGL coverage for 7 months and then expressly denying CGL coverage, and creating conflicts with its EL coverage reservations and denials, ACE was not permitted to step in and seek to control Plaintiffs' defense. *E.g.*, *Travelers Indem. Co. v. Centex Homes*, No. 11-CV-03638-SC, 2015 U.S. Dist. LEXIS 137898, at *16 (N.D. Cal. Oct. 7, 2015) (insurer breached duty to defend by failing to provide defense at least 30 days after complaints were filed, and thus "also lost its right to control [insured's] defense"); *Yowell v. Seneca Specialty Ins. Co.*, 117 F. Supp. 3d 904, 908-09 (E.D. Tex. 2015) ("[Insurer's] 140-day delay was, in essence, a denial of a defense….Since [insurer] breached its duty to defend, [insurer] waived its right to control the defense."); *BellSouth*

*Telecomms., Inc. v. Church & Tower of Fla., Inc.*, 930 So. 2d 668, 673 (Fla. Dist. Ct. App. 2006) (insurer that provides no defense "breaches its duty to defend and thereby forfeits its right to control the defense"); *Hartford Cas. Ins. Co. v. J.R. Marketing, L.L.C.*, 216 Cal. App. 4th 1444, 1457 (2013) (where insurer breaches its duty to defend, it "loses all right to control the defense").

**Third**, to the extent there ever was any duty to defend under the CGL Policy, Plaintiffs deselected the CGL Policy on May 23, 2022. Plaintiffs advised they did "not accept…allocation" given ACE's failure to timely address CGL "coverage," and demanded ACE "fully fund[] the defense…under its EL coverage." (SOF Resp., ¶ 63, Barrios Decl., ¶ 11, **Ex. J**.) Plaintiffs reiterated their deselection of the CGL policy in paragraph 26 of the First Amended Complaint. (ECF No. 24). ACE was required to comply with these requests. *Chi. Hosp. Risk Pooling Program v. Ill. Med. Inter-Ins. Exch.*, 325 Ill. App. 3d 970, 976 (1st Dist. 2001) (insurer cannot "trigger insured's coverage under another policy [against] his wishes").

### B. Plaintiffs Did Not Violate ACE's Alleged Right to Control the Defense or Breach the EL Coverage Part's Voluntary Payments or Cooperation Clauses.

When a conflict exists, "the insurer ordinarily must pay the costs of independent counsel 'instead of participating in the defense itself.'" *David Agency*, 327 F. Supp. 2d at 929 (citing cases). The insurer "must allow the insured to select its own counsel and reimburse the insured for those costs." *Id.* ACE's argument that Plaintiffs "prevented ACE from exercising its right to control the defense" thus is completely meritless, because ACE had no such right.

ACE's position also completely contradicts its argument that it did not accept a duty to defend, but only "agreed" to defend. (SOF Resp., ¶¶ 35, 52.) If ACE did not have the duty to defend, it had no right to defend. *La Rotunda*, 87 Ill. App. 3d at 456. Because the predicate for ACE's arguments that Plaintiffs breached the voluntary payments and cooperation clauses is its erroneous assertion that Plaintiffs prevented ACE from controlling the defense, the arguments fail.

ACE cites *National Forge Casualty Co. v. Forge Industrial Staffing, Inc.*, 567 F.3d 871 (7th Cir. 2009), and *Builders Concrete Services, LLC. v. Westfield National Insurance Co.*, 486 F. Supp. 3d 1225 (N.D. Ill. 2020), to support its argument that no conflict arose here. ACE asserts that even though it could have manipulated the defense of the employer status issue in a manner that completely and irreparably eliminated EL coverage, Plaintiffs still would have had coverage under the CGL Policy. (Opp. at 9.) Neither case supports ACE's position. *National Forge* states "conflict counsel should be appointed" if an "insurer's interests would be furthered by" defending "less than vigorous[ly]." 567 F.3d at 875 (citing *Turegum*, 168 Ill. App. 3d at 163). This is the exact situation present here: ACE would have benefitted by defending the employer status issue "less than vigorously," as an adverse ruling would have resulted in Plaintiffs losing EL coverage, the only coverage ACE agreed to provide. Further, in *National Forge*, the claims against the insured did not allege any risks excluded from coverage, so any conflict was "potential," not "actual." *Id.* at 878-79. Here, the conflict was anything but potential. A finding that Plaintiffs were not employers – the crucial issue in dispute on which ACE reserved rights – would have eliminated EL coverage, so ACE had an incentive to defend that issue "less than vigorously." *David Agency*, 327 F. Supp. 2d at 928; *Nandorf*, 134 Ill. App. 3d at 138.

*Builders* addressed conflicts that arise where an underlying complaint contains two "mutually exclusive theories of liability," one covered by the policy and the other excluded. 486 F. Supp. 3d at 1229. *Builders'* basis for finding a conflict, however, is not the exclusive basis, but is merely one factual circumstance where a defending insurer would have an incentive to defend less vigorously. Here, the underlying claimants had "no possible reason" to assert a theory of liability based on Plaintiffs' status as employers, because a determination that Plaintiffs were their employers could have triggered WC exclusivity. This case thus is similar to *Pekin v. Wilson*, 237

Ill. 2d 446, 462 (2010), where the duty to defend arose from the insured's raising self-defense (not excluded) in response to an assault claim (excluded). The conflict of interest here arose out of Plaintiffs' assertion of a WC exclusivity defense, and ACE's reservation of rights as to Plaintiffs' employer status, which gave it "an interest in providing a less-than-vigorous defense." *Nandorf*, 134 Ill. App. 3d at 138; *David Agency*, 327 F. Supp. 2d at 928.

Finally, neither *National Forge* nor *Builders* say anything about analyzing conflicts in the context of a "comprehensive insurance program." (Opp. at 9.) Both cases analyzed whether a conflict existed where only a single policy was at issue. *Nat'l Forge*, 567 F.3d at 873; *Builders*, 486 F. Supp. 3d at 1227. (*Id.*) The fact that ACE issued both the WC/EL Policy and CGL Policy is irrelevant in any event. As outlined above, ACE ignored the CGL Policy for 7 months and ultimately denied CGL coverage, so the only possible coverage available was the EL coverage.

**C.    ACE Never Attempted to Be Involved In or Exercise Control of the Defense.**

ACE claims Plaintiffs deprived it of the "right" to control the defense, but ACE submitted no evidence that it ever sought to be involved in the litigation strategy or communicated any purported desire to take over and control or direct the defense of the Underlying Suits. The Underlying Suits were filed on June 24, 2021, and ACE did not agree to defend Baltimore Sun under the EL coverage until September 22, 2021, three months later, and did not agree to defend Tribune under the EL coverage until January 2022. There was significant litigation activity in the Underlying Suits during this time period (Plaintiffs' Resp. to ACE SOF, ¶ 16), but ACE has submitted no evidence of any attempt to direct the conduct of the defense, let alone that any such attempt was rejected by the Plaintiffs. Given that ACE had denied EL coverage to Tribune until January 2022, Tribune had no obligation to "cooperate" during the preceding 7 months. Then, shortly after agreeing to defend Tribune, on February 18, 2022, ACE refused to pay defense costs and demanded allocation to the CGL Policy, falsely claiming it had previously accepted CGL

11

defense coverage. ACE was thus in breach of both the EL coverage part and the CGL Policy, meaning Plaintiffs had no obligation to cooperate. In any event, the undisputed facts show Plaintiffs cooperated with ACE. (*Id.*) ACE's claim that Plaintiffs failed to cooperate fails.

**D.      Even if Plaintiffs Failed to Cooperate, ACE Was Not Substantially Prejudiced.**

"[A]n insurer's claim of non-cooperation must allege…it was substantially prejudiced." *Bernstein v. Genesis Ins. Co.*, No. 98 C 5446, 1999 U.S. Dist. LEXIS 12292, at *15-16. (N.D. Ill. July 28, 1999). An insurer must prove "it was actually hampered in its defense by the violation of the cooperation clause." *Magnetek, Inc. v. The Travelers Indem. Co.*, No. 17 C 3173, 2019 U.S. Dist. LEXIS 115231, at *16-17 (N.D. Ill. July 11, 2019). Importantly, "[i]n order to establish such a breach, 'the insurer must show that it exercised a reasonable degree of diligence in seeking the insured's participation and that the insured's absence was due to a refusal to cooperate.'" *Country Mut. Ins. Co. v. Under Constr. & Remodeling, Inc.*, 2021 IL App (1st) 210600, ¶ 28.

ACE claims it suffered prejudice because it was "deprived of the right to seek an early determination" of the "employment status," issue, which "could have dramatically reduced the cost of the litigation." (Opp. at 12.) ACE submits no evidence that it ever recommended or suggested this course of action, barring a finding of prejudice. ACE's argument also highlights the conflict of interest here: ACE had an incentive to resolve the employer status issue quickly, because if Plaintiffs received an adverse ruling, ACE would have withdrawn EL defense coverage.

ACE also asserts it suffered prejudice due to Plaintiffs' failure to timely submit defense expenses. (*Id.* at 13.) ACE denied Tribune EL coverage, so ACE cannot have suffered prejudice due to Tribune not submitting invoices. Moreover, ACE never requested defense invoices from Plaintiffs until February 16, 2022 (Plaintiffs' Resp. to ACE SOF, ¶ 15), even though the conflict with Baltimore Sun existed as early as September 2021, which meant that "instead of participating in the defense itself," ACE was required to "pay the costs of independent counsel." *David Agency*,

327 F. Supp. 2d at 929. ACE's utter lack of diligence on this issue precludes any suggestion, let alone a finding, of prejudice. Further, ACE did not suffer any actual prejudice, let alone substantial prejudice, by not receiving invoices before February 16, 2022. When it received the invoices, it refused to pay a single penny, even though some portion of the defense costs had to be "reasonable and necessary." If anything, ACE has significantly benefitted from Plaintiffs funding the defense.

Finally, ACE suffered no prejudice due to Plaintiffs negotiating the settlement of the Underlying Suits without involving ACE. (Opp. at 13.) ACE was not asked to contribute, and did not contribute, any funds to the settlement, so whether it was involved in settlement negotiations is irrelevant. Moreover, at the time of these negotiations in December of 2022, ACE had long been in breach of its duty to defend, and Plaintiffs thus had no duty to involve ACE in the negotiations. It beggars belief to conclude that ACE was "prejudiced" by not having been "involved" in settlement negotiations that resulted in the Underlying Suits being settled, thus eliminating future defense costs spending, without ACE having to pay a penny of the settlement.

### III.     ACE's CGL Allocation Argument Is Irrelevant and Meritless.

ACE incorrectly argues the EL coverage part's Other Insurance clause requires allocation to the CGL Policy. (Opp. at 7.) ACE's argument fails for multiple reasons. *First*, allocation is a damages issue irrelevant to ACE's liability for its breach of its EL duty to defend. *Wolverine WorldWide, Inc. v. Am. Ins. Co*., No. 19-cv-10, 2021 U.S. Dist LEXIS 199675, at *6 n.7 (W.D. Mich. Oct. 18, 2021) (allocation is not "a predicate issue" for deciding breach of duty to defend).

*Second*, because ACE breached its duty to defend under the EL coverage, it is estopped from raising policy defenses to coverage, including by seeking allocation to the CGL Policy. *BASF AG v. Great Am. Assur. Co.*, No. 04 C 6969, 2006 U.S. Dist. LEXIS 76035, at *15-16 (N.D. Ill. Oct. 3, 2006) (holding breaching insurers "estopped from" allocating damages).

*Third*, because ACE ignored the CGL Policy for 7 months after Plaintiffs' tender of the

13

Underlying Suits and then denied CGL coverage, ACE breached the CGL Policy. *Korte Constr. Co. v. Am. States Ins*., 322 Ill. App. 3d 451, 458 (5th Dist. 2001) (insurer must seek declaration or defend under reservation "within a reasonable time of a demand by the insured"); *see also* 215 ILCS 5/154.6 (it is an Unfair Claims Practice for insurer to "fail[] to acknowledge with reasonable promptness pertinent communications with respect to claims arising under its policies"). ACE's delay is especially improper here, as the Underlying Suits were "well underway" when ACE issued its CGL letter. *Caulfield v. Packer Eng'g, Inc.*, 2016 IL App (1st) 151329-U, ¶ 26. ACE cannot force Plaintiffs to allocate defense costs to a CGL Policy that ACE breached in order to require Plaintiffs to absorb those costs as part of the deductible.

**Fourth**, "Other Insurance" clauses only apply where two policies "cover a risk on the same basis" and there is an "identity between the policies" as to "risks" insured. *Chi. Hosp. Risk Pooling Program*, 325 Ill. App. 3d at 981 (1st Dist. 2001). Courts refuse to apply other insurance clauses where two policies cover different risks. *E.g.*, *Hartford Cas. Ins. Co. v. Nat'l Union Fire Ins. Co.*, No. 19-cv-06349-RS, 2020 U.S. Dist. LEXIS 251356, at *32-33 (N.D. Cal. Nov. 24, 2020); *Fed. Ins. Co. v. Firemen's Ins. Co.*, 769 F. Supp. 2d 865, 875 (D. Md. 2011); *Cont'l Cas. Co. v. N. Am. Capacity Ins.* Co., No. H-05-3252, 2008 U.S. Dist. LEXIS 139046, at *49 (S.D. Tex. Aug. 29, 2008). Here, the EL coverage protects against the risk of injury to employees, whereas the CGL Policy expressly excludes such coverage. These coverages do not insure against the "same risk," so the EL coverage part's Other Insurance clause is inapplicable as a matter of law. *Md. Cas. Co. v. State Farm Mut. Auto. Ins. Co.*, 419 P.2d 229, 233 (N.M. 1966) (two policies covered "different risks" where one excluded coverage for a risk covered under the other).

**Fifth**, if the CGL Policy ever provided a duty to defend, Plaintiffs deselected it.

## IV. ACE's Damages Arguments Are Irrelevant to ACE's Breach of Its Duty to Defend.

The "key issues" ACE claims must be addressed before Plaintiffs' Motion can be granted

14

(Opp. at 14-15) are damages issues that are irrelevant to ACE's liability for breach of its duty to defend. *See Meridian Sec. Ins. Co. v. Roberts*, 526 F. Supp. 3d 352, 361 (S.D. Ill. 2021).

(1) <u>Whether pre-tender defense costs are reimbursable.</u> *E.g.*, *CMK Dev. Corp. v. West Bend Mut. Ins. Co.*, 395 Ill. App. 3d 830, 836 (1st Dist. 2009) (issue of whether insurer had duty to defend is decided before issue of whether insured may recover pre-tender defense costs).

(2) <u>Whether defense costs must be allocated to the CGL Policy.</u> *E.g.*, *Wolverine*, 2021 U.S. Dist LEXIS 199675, at *6 n.7 (allocation not "predicate issue" for deciding duty to defend).

(3) <u>Whether Plaintiffs have exhausted all applicable deductibles and (4) Whether Plaintiffs received credits for WC payments they made that would replenish the deductible they owe.</u> *E.g.*, *Am. Safety Cas. Ins. Co. v. City of Waukegan*, 678 F.3d 475, 481-82 (7th Cir. 2012) (duty to defend begins the moment suit is filed, not after deductible amount is exceeded).

(5) <u>Whether Plaintiffs' defense costs were reasonable and necessary.</u> *Taco Bell v. Cont'l Cas. Co.*, 388 F.3d 1069, 1076-77 (7th Cir. 2004) (process for determining reasonableness and necessity of defense costs depends on whether insurer breached its duty to defend).

## V.    ACE Is Estopped from Asserting Coverage Defenses.

Where an insurer breaches its duty to defend, it is estopped "from raising policy defenses to coverage." *Employers. Ins. of Wausau v. Ehlco Liquidating Tr.*, 186 Ill. 2d 127, 147-48 (1999). Because ACE breached its duty to defend under the EL coverage, ACE is estopped from raising defenses to coverage, including by: (1) arguing Plaintiffs breached the voluntary payments clause, *City of Waukegan*, 776 F. Supp. 2d at 702; and (2) seeking allocation of defense costs to the CGL Policy, *BASF*, 2006 U.S. Dist. LEXIS 76035, at *15-16. ACE's ability to challenge the Plaintiffs' defense costs is also significantly limited. *Taco Bell*, 388 F.3d at 1076-77.

## VI.    The Doctrine of Unclean Hands Does Not Apply Here.

ACE's claims of misconduct by Plaintiffs lack merit, so the unclean hands doctrine is inapplicable. Further, the doctrine is equitable in nature and does not bar damages claims, such as those made by Plaintiffs. *Scheiber v. Dolby Labs., Inc.*, 293 F.3d 1014, 1021 (7th Cir. 2002).

Dated: November 17, 2023                      Respectfully submitted,


                                              *s/ John D. Shugrue*
                                              John D. Shugrue
                                              John S. Vishneski
                                              Reed Smith LLP
                                              10 S. Wacker Dr., Suite 4000
                                              Chicago, IL 60606
                                              (312) 207-1000
                                              jshugrue@reedsmith.com
                                              jvishneski@reedsmith.com

                                              *Counsel for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 17, 2023 a true and correct copy of the foregoing was

filed with the Clerk of Court using the CM/ECF system, which sends notice to the following:

>Joseph A. Hinkhouse
>Richard A. Hodyl
>Hinkhouse, Williams & Walsh, LLP
>180 N. Stetson Ave., Suite 3400
>Chicago, IL 60601
>(312) 784-5443
>(312) 784-5454
>jhinkhouse@hww-law.com
>rhodyl@hww-law.com

*Counsel for ACE American Insurance Company*

*/s/ John D. Shugrue*

17