**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **TRIBUNE PUBLISHING COMPANY, LLC,** | ) | |
| **THE BALTIMORE SUN COMPANY, LLC,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 22 C 7327** |
| | ) | |
| **ACE AMERICAN INSURANCE COMPANY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

MATTHEW F. KENNELLY, District Judge:

The Baltimore Sun Company (Sun) and its parent company, Tribune Publishing Company (Tribune), filed suit against their insurer, ACE American Insurance Company. The plaintiffs allege that ACE agreed to defend them in two lawsuits but then declined to reimburse their defense expenses. ACE asserts that it was not obligated to reimburse the plaintiffs for their defense expenses because they breached their insurance contract by making voluntary payments to lawyers and failing to cooperate with ACE's defense of the cases. The plaintiffs have moved for summary judgment on count 1 of their amended complaint, in which they allege that ACE breached its duty to defend. For the following reasons, the Court grants the plaintiffs' motion.

## Background

The following facts are undisputed unless otherwise noted.

### A. Insurance policies at issue

The plaintiffs purchased two insurance policies from ACE: a Workers Compensation/Employers Liability (WC/EL) Policy and a Commercial General Liability

(CGL) Policy. Both Tribune and Sun are the named insureds on both policies. The EL part of the WC/EL Policy covers injury claims that "arise[ ] out of and in the course of the injured employee's employment by [the plaintiffs]." Pls.' Stmt. of Material Facts ¶ 3 (internal quotations and alterations omitted). It "requires ACE to pay all sums that [the plaintiffs] legally must pay as damages because of bodily injury to [the plaintiffs'] employees." *Id.* ¶ 4 (internal quotations and alterations omitted). In addition, the EL part states that ACE has "the right and duty to defend at its expense any claim, proceeding, or suit against [the plaintiffs] for benefits payable by this insurance and gives ACE the right to investigate these claims." *Id.* ¶ 5 (internal quotations and alterations omitted). The WC/EL Policy has a $1 million dollar deductible and a $1 million dollar policy limit. Defense expenses erode the deductible, but the deductible does not erode the policy limit.

The CGL Policy covers injury claims brought by non-employees. It states that ACE must pay "those sums the insured becomes legally obligated to pay as damages because of bodily injury or property damage that is caused by an occurrence." *Id.* ¶ 8. Claims by the insureds' employees are specifically excluded from CGL coverage. Like the WC/EL Policy, the CGL Policy has a $1 million deductible and a matching $1 million policy limit, and defense costs erode the deductible. *Unlike* the WC/EL Policy, however, the CGL Policy's $1 million deductible erodes its $1 million policy limit. In other words, the CGL Policy is essentially "a no risk-transfer policy" where ACE does not bear the ultimate financial responsibility for Sun's or Tribune's defense expenses or any settlement or judgment amounts. *Id.* ¶ 46; *see also* Def.'s Resp. at 2 ("Under the CGL Policy's terms, Sun and Tribune agreed to assume responsibility to satisfy the

deductible, which means they agreed to bear financial responsibility for all costs to defend claims and lawsuits alleging damages potentially within the scope of the CGL Policy.").

## B.   Underlying lawsuits

In June 2018, a gunman entered the offices of the Capital Gazette in Annapolis, Maryland, and killed and injured numerous workers.  The Capital Gazette is a subsidiary of Sun, and Sun is a subsidiary of Tribune.  After the mass shooting, Tribune and Sun paid over $900,000 in workers' compensation claims that were filed on behalf of the victims and their families.  Pls.' Stmt. of Material Facts ¶ 15.  It is undisputed that "several of the individuals who filed these workers' compensation claims identified Tribune and/or Baltimore Sun as their employers"; that ACE "received and reviewed documents stating that these individuals identified Tribune and/or Baltimore Sun as their employers in their workers' compensation filings"; and that ACE was aware that Tribune and Sun had paid over $900,000 in workers' compensation claims related to the incident.  *Id.* ¶¶ 11–12, 15.

In June 2021, two lawsuits were filed in a Maryland state court on behalf of the victims and their families against Sun and Tribune.  The claimants[1] asserted various tort claims arising from the mass shooting.  Sun and Tribune argued that the claims were barred by Maryland workers' compensation exclusivity laws because the victims were employees of Sun and Tribune.  The claimants argued that workers' compensation exclusivity laws did not apply because they were employees of the Capital Gazette and

---

[1] For clarity, the Court will refer to Sun and Tribune as "the plaintiffs" and the mass shooting victims and/or their family members who brought the lawsuits against Sun and Tribune as the "claimants."

*not* of Sun or Tribune.  They argued in the alternative that Sun and Tribune "were both judicially and equitably estopped from asserting workers' compensation exclusivity even if they qualified as [their] employers, because [Sun and Tribune] purportedly had taken an inconsistent position in a different lawsuit and prevailed."  *Id.* ¶ 25.  The lawsuits were settled on December 1, 2022.  Tribune and Sun did not ask ACE to contribute to the settlement, and ACE did not do so.  *Id.* ¶ 51.

**C.    Insurance dispute**

The plaintiffs first informed ACE of the claimants' lawsuits in April 2021.  The plaintiffs informed ACE via e-mail that the claimants were "definitely going to file suit, and would probably have to file against the [Capital] Gazette and its parent companies." *Id.* ¶¶ 16–17.  The plaintiffs also informed ACE that the claimants would argue that "The [Baltimore] Sun and The Tribune are not entitled to raise the Workmen's compensation statute as a defense."  *Id.* ¶ 18.  The two lawsuits were filed in June 2021.  The plaintiffs tendered the defense of the suits to ACE "shortly after they were filed."  *Id.* ¶ 21.

On September 22, 2021, ACE sent the plaintiffs a letter stating that:

We understand . . . [the underlying claimants] were all employees of The Baltimore Sun . . .  If any of these understandings are incorrect, please advise. Otherwise, assuming they are correct, The Baltimore Sun qualifies as an insured employer and we will presently defend it under the Policy subject to this full Reservation of Rights.  However, if it is later determined that The Baltimore Sun was not [the underlying claimants'] employer at the time of the incident, we must reserve our right to later disclaim coverage and withdraw our defense.

[. . .]

Conversely, however, because there is no evidence or allegation of an employment relationship between Tribune Publishing and [the underlying claimants] at the time of the incident, Tribune Publishing does not qualify as an insured employer, and we must respectfully disclaim coverage for it under the Policy.

4

Am. Compl., Ex. D at 4 (Sept. 2021 Marshall Letter).  Although ACE agreed to defend

Sun, its letter did not indicate an intention to do so via its own counsel.  Rather, the

letter stated:

> We understand that William Fish, Jr. of the Hinckley Allen law firm, a non-Chubb
> panel firm, was retained to defend The Baltimore Sun and Tribune Publishing in
> these matters. . . .  By copy of this letter to Mr. Fish we are informing him of our
> coverage position and ask that he please keep [ACE's third-party administrator]
> and us updated as well as provide all notices, demands, and legal papers related
> to these matters along with his estimated budget(s).  Additionally, we ask that Mr.
> Fish work with [ACE's third-party administrator] and our Vendor Management
> Department to complete the due-diligence process to be considered as a Chubb
> approved firm for The Baltimore Sun's purposes regarding these matters.
> Finally, we ask that your Company continue to cooperate and assist us in the
> defense of these matters.

*Id.*  The plaintiffs contested ACE's coverage position with respect to Tribune by

submitting additional evidence of Tribune's employer status on December 13, 2021.

After reviewing the evidence, ACE sent a letter on January 28, 2022, stating that, based

on its understanding of that additional evidence,

> The Baltimore Sun and Tribune could be determined to be the [underlying
> claimants' employers.  Therefore, we will presently agree to defend both the
> Baltimore Sun and the Tribune under the Policy subject to this full Reservation of
> Rights.  However, if it is later determined that The Baltimore Sun or Tribune were
> not the employers of the [underlying claimants] at the time of the incident, we
> must reserve our right to disclaim coverage, withdraw our defense, and seek
> reimbursement for any defense expenses incurred on behalf of the Baltimore
> Sun and/or the Tribune.

Am. Compl., Ex. E at 3 (Jan. 2022 Marshall Letter).  The letter repeated the request for

Sun and Tribune's counsel to keep ACE "updated" and to work with ACE's "Vendor

Management Department" to become an "approved firm."  *Id.*

In February 2022, ACE sent a letter to the plaintiffs contesting its responsibility

for the plaintiffs' defense expenses.  The letter stated that ACE had not approved of the

plaintiffs' choice of counsel—Hinckley, Allen, & Snyder LLP and Kramon & Graham

P.A.—or the counsels' rates and expenses.  It advised that, if plaintiffs' counsel was "unwilling to reduce their rates to those customarily paid by [ACE] and abide by [ACE's] Litigation Management Guidelines, [ACE] will substitute one of its qualified panel firms to defend the insureds."  Am. Compl., Ex. G at 3 (Feb. 2022 Perkins Letter).  The letter also stated that ACE was defending the plaintiffs under *both* the WC/EL Policy and the CGL Policy, implying that defense expenses should be shared between the two policies.

The plaintiffs responded to this letter by disputing ACE's position regarding their choice of counsel, ACE's responsibility for defense expenses, and the allocation of defense expenses to the CGL Policy.  From that point on, the parties continued to dispute these and other issues, culminating in the present suit.  To date, ACE has not reimbursed the plaintiffs for any of their defense expenses.

On December 29, 2022, the plaintiffs filed this suit seeking (1) damages for breach of contract, (2) statutory damages and attorney's fees for vexatious and unreasonable conduct under 215 ILCS 5/155, and (3) a declaratory judgment that ACE is not entitled to allocate any defense costs to the CGL Policy.  ACE filed a counterclaim seeking a declaratory judgment that (1) it had no duty to defend or indemnify the plaintiffs under the WC/EL Policy, (2)  ACE properly allocated defense costs to the CGL Policy, and (3) in the alternative, ACE owes only reasonable and necessary defense expenses to the plaintiffs.  The plaintiffs now seek summary judgment on count 1 of their amended complaint, specifically, a determination that ACE breached its duty to defend.

## Discussion

Summary judgment is appropriate only if "there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the Court must "construe all facts and inferences in favor of the nonmoving party." *Love v. JP Cullen & Sons, Inc.*, 779 F.3d 697, 701 (7th Cir. 2015). The parties agree that Illinois law governs the issues in this case.

## A.    Duty to defend

The Court first notes that, in opposing the plaintiffs' motion for summary judgment, ACE does not argue that the underlying lawsuits did *not* trigger its duty to defend Sun and Tribune. Rather, ACE asserts only that the plaintiffs' conduct interfered with its "right" to defend the suits and therefore "voids any right they otherwise had under the EL coverage and forecloses any entitlement to reimbursement of defense costs from ACE." Def.'s Resp. at 6. ACE therefore has waived any argument that the underlying lawsuits did not trigger a duty to defend Sun and Tribune. *See Nichols v. Mich. City Plant Planning Dep't*, 755 F.3d 594, 600 (7th Cir. 2014) ("The non-moving party waives any arguments that were not raised in its response to the moving party's motion for summary judgment.").

Even if ACE had not waived the point, the Court agrees with the plaintiffs that ACE had a duty to defend. "The oft-repeated refrain of Illinois insurance law is that an insurer's duty to defend is much broader than its duty to indemnify." *Title Indus. Assurance Co., R.R.G. v. First Am. Title Ins. Co.*, 853 F.3d 876, 883 (7th Cir. 2017) (internal quotations and citation omitted). An insurer has a duty to defend its insured against "a claim if it *potentially* falls within the policy's coverage." *Supreme Laundry Serv., L.L.C. v. Hartford Cas. Ins. Co.*, 521 F.3d 743, 747 (7th Cir. 2008). "In deciding

7

whether an insurer breached its duty, Illinois courts ordinarily apply the 'eight-corners' rule: 'the court compares the four corners of the underlying complaint with the four corners of the insurance policy to determine whether facts alleged in the underlying complaint fall within or potentially within coverage.'" *Title Indus. Assurance Co., R.R.G.*, 853 F.3d at 883 (quoting *Am. Alt. Ins. Corp. v. Metro Paramedic Servs., Inc.*, 829 F.3d 509, 512–13 (7th Cir. 2016)). There is an exception to this rule, however, if "the insurer possesses knowledge of true but unpleaded facts that, when taken together with the allegations in the complaint, indicate that the claim is within or potentially within the policy coverage." *Pekin Ins. Co. v. AAA-1 Masonry & Tuckpointing, Inc.*, 2017 IL App (1st) 160200, ¶ 24, 81 N.E.3d 1040, 1045; *Travelers Ins. Cos. v. Penda Corp.*, 974 F.2d 823, 827 (7th Cir. 1992) ("In addition, the insurer must defend if it has knowledge of 'true but unpleaded facts which when taken together with the allegations in the complaint indicate that the claim is potentially covered by the policy.'" (quoting *U.S. Fidelity & Guar. Co. v. Wilkin Insulation Co.*, 193 Ill. App. 3d 1087, 550 N.E.2d 1032, 1036 (1989))).

The parties agree that the complaints in the two underlying suits do not allege that the claimants were employees of Tribune or Sun. (Both parties suggest that the claimants had an incentive to disclaim employee status because their suits otherwise likely would be found barred by the relevant workers' compensation laws.) The plaintiffs argue that ACE nevertheless had a duty to defend them in the lawsuits because it was aware that Tribune and Sun qualified (or at least arguably qualified) as the claimants' employers. The Court agrees that the undisputed evidence shows that ACE was aware of the plaintiffs' potential employer status. For example, letters from ACE directly

acknowledge that Tribune and Sun might qualify as employers. *See, e.g.*, Jan. 2022 Marshall Letter at 3 ("The Baltimore Sun and the Tribune could be determined to be the [claimants'] employers."); Am. Compl., Ex. F at 3 (Jan. 2022 Vernacchio Letter) ("[S]ince both [Sun and Tribune] are either employers or arguably employers of the [claimants], the *Employer's Liability* ('EL') exclusion may apply to preclude coverage" under the CGL Policy.). In addition, ACE does not dispute that it was aware that Tribune and Sun had paid out workers' compensation settlements to some of the underlying claimants and that some of these claimants had named Tribune and Sun as their employer in those proceedings. *See* Pls.' Stmt. of Material Facts ¶¶ 11–12, 15. This is sufficient to establish that ACE had a duty to defend. *See Gen. Agents Ins. Co. of Am. v. Midwest Sporting Goods Co.*, 215 Ill. 2d 146, 165, 828 N.E.2d 1092, 1104 (2005) (concluding that an insurer "remained obligated to defend [its insured] as long as any questions remained concerning whether the underlying claims were covered by the policies" (citing *Liberty Mut. Ins. Co. v. FAG Bearings Corp.*, 153 F.3d 919, 924 (8th Cir. 1998)).

Moreover, because ACE agreed to defend Sun and Tribune—even under a reservation of rights—it was obligated to continue to defend its insureds until it subsequently sought and obtained a declaratory judgment that it owed no duty to defend. *See id.* (explaining that an insurer that agreed to defend its insured pursuant to a reservation of rights and then filed a declaratory judgment action had an "obligation to defend . . . until the trial court found that [the insurer] did not owe [the insured] a defense"). ACE never filed such an action, and it is too late for ACE to seek such relief now. *See Emps. Ins. of Wausau v. Ehlco Liquidating Tr.*, 186 Ill. 2d 127, 157, 708 N.E.2d 1122, 1138 (1999) ("Where an insurer waits to bring its declaratory judgment

action [regarding its duty to defend] until after the underlying action has been resolved by a judgment or a settlement, the insurer's declaratory judgment action is untimely as a matter of law.").  The Court therefore concludes that ACE was obligated to defend Sun and Tribune against the underlying claims.

The next question is whether ACE breached its duty to defend.  It is undisputed that ACE has neither paid for the plaintiffs' defense nor reimbursed the plaintiffs for any defense-related expenses.  This constitutes a breach of the duty to defend.  *See id.* at 156, 708 N.E.2d at 1137 (concluding that the insured breached its duty to defend by failing to either provide a defense or "reimburs[e] [the insured] for costs as they were incurred"); *Supreme Laundry Serv., L.L.C.*, 521 F.3d at 750 (applying Illinois law) ("[W]hen an insurer has a duty to defend it must reimburse [the insured] for the reasonable fees and costs incurred in that action to date." (internal quotations and citation omitted)).  Although ACE disputes the reasonableness of the plaintiffs' defense costs, it cites to no authority suggesting that this justifies its withholding of *any* payment whatsoever.  The amount that ACE must reimburse the plaintiffs is more appropriately a question of damages.  Because ACE failed to pay for any defense expenses, the Court concludes that ACE breached its duty to defend.

## C.    Voluntary payments

ACE argues that it has no obligation to reimburse the plaintiffs for their defense expenses because "Sun and Tribune unilaterally retained their own defense counsel(s) who generated more than $4 million in unauthorized defense fees and expenses." Def.'s Resp. at 7.  ACE contends that the plaintiffs "wrongful[ly] appoint[ed]" independent counsel and therefore "voluntarily incurred significant defense costs" that

ACE has no obligation to reimburse under the voluntary payments clause. *Id.* at 11. It cites a clause in the WC/EL Policy stating, "Do not voluntarily make payments, assume obligations or incur expenses, except at your own cost." Def.'s Stmt. of Add'l Facts ¶ 4.

The Court disagrees for two reasons. The first problem is that ACE does not direct the Court to any record support for its contention that the plaintiffs' choice of defense counsel was "wrongful" or "unauthorized," at least initially. When the suits were tendered to ACE shortly after they were filed in June 2021, ACE was aware that the plaintiffs were represented by counsel that ACE itself had not provided. Yet ACE cites to no evidence that it expressed its disapproval of the plaintiffs' choice of counsel at that point or provided an alternative option. When ACE agreed to defend Sun in September 2021, it acknowledged that Sun was represented by independent counsel. ACE instructed the plaintiffs' counsel to "please keep [ACE's third-party administrator] and us updated as well as provide all notices, demands, and legal papers related to these matters along with his estimated budget(s)" and to "work with [ACE's third-party administrator] and our Vendor Management Department to complete the due-diligence process to be considered as a[n] [ACE] approved firm." Sept. 2021 Marshall Letter at 4. But ACE did not so much as hint that it took issue with the proposition that plaintiffs would, and could, be represented by counsel of their choice. Similarly, when ACE agreed to defend Tribune in January 2022, it again acknowledged that plaintiffs were being represented by their chosen counsel. ACE did not express that it had serious objections to the plaintiffs' defense counsel until February 2022—approximately seven months after the suits were filed. After essentially agreeing without objection to carry out its duty to defend by way of reimbursement, ACE cannot escape its reimbursement

obligations by belatedly claiming that the plaintiffs' expenses were "voluntary" or "unauthorized."

The Court notes that beginning in February 2022, ACE repeatedly informed the plaintiffs that it believed their counsel's rates and expenses were unreasonable.  An insurer's duty to defend is limited to *reasonable* defense expenses.  *See A. Kush & Assocs., Ltd. v. Am. States Ins. Co.*, 927 F.2d 929, 934–35 (7th Cir. 1991) ("Even where estopped from denying coverage and where the insurer wrongfully refused to defend, breaching its duty to the insured, the insurer is liable, at most, 'for the cost and expense which the insured was put to by the insurer's breach of the insurance contract, and this liability embraces reasonable attorneys fees.'" (quoting *Ervin v. Sears, Roebuck & Co.*, 127 Ill. App. 3d 982, 989, 469 N.E.2d 243, 248 (1984))).  Thus even though ACE cannot appropriately characterize the plaintiffs' reasonable defense expenses as "voluntary" payments for which ACE is not responsible, that does not make ACE liable for any unreasonable defense expenses.  As the Court has discussed, however, the reasonableness of plaintiffs' defense expenses is a question of damages, not liability.

Second, the Court agrees with the plaintiffs that there was a conflict of interest that entitled them to hire independent counsel.  Under Illinois law, "[i]f there is an actual conflict of interest between the insurer and insured, the insured has the right to obtain independent counsel at the insurer's expense." *Nat'l Cas. Co. v. Forge Indus. Staffing Inc.*, 567 F.3d 871, 874 (7th Cir. 2009).  "If, after comparing the complaint against the insured to the insurance policy, 'it appears that factual issues will be resolved in the underlying suit that would allow insurer-retained counsel to "lay the groundwork" for a later denial of coverage, then there is a conflict between the interests of the insurer and

those of the insured.'" *Id.* at 875 (quoting *Am. Fam. Mut. Ins. Co. v. W.H. McNaughton Builders, Inc.*, 363 Ill. App. 3d 505, 511, 843 N.E.2d 492, 498 (2006)).

That is precisely the case here. The plaintiffs had a strong interest in proving that they were the claimants' employers and thus shielded from suit by workers' compensation exclusivity laws. A finding that the plaintiffs were the claimants' employers, however, would mean that the plaintiffs were entitled to coverage under the WC/EL Policy rather than the CGL Policy. This would benefit the plaintiffs to the detriment of ACE. As ACE itself acknowledges, under the CGL Policy, "Sun and Tribune were required to reimburse ACE the $1 million deductible amount for any defense expenses and damages paid by ACE," whereas coverage under the WC/EL Policy would leave ACE financially responsible for defense expenses and damages. Def.'s Resp. at 10. Thus ACE had an interest in steering coverage to the CGL Policy rather than the WC/EL Policy, which is exactly the opposite of the plaintiffs' interest.

ACE argues that the plaintiffs were not entitled to independent counsel because this conflict of interest would not "completely and irreparably eliminat[e]" coverage but rather would shift coverage from the WC/EL Policy to the CGL Policy. Def.'s Resp. at 9 (quoting *Forge Indus. Staffing Inc.*, 567 F.3d at 875). It cites to the Seventh Circuit's decision in *Forge Industrial Staffing*, where the court explained that "[i]n the cases in which Illinois courts have required the appointment of independent counsel, there have been crucial facts alleged on the face of the complaint which, if proven true, completely and irreparably took the matter out of the scope of the insurance policy's coverage." *Forge Indus. Staffing Inc.*, 567 F.3d at 879. Because the plaintiffs would be covered under either the WC/EL Policy or the CGL Policy, ACE argues, no true conflict of

interest existed.

As an initial matter, ACE does not cite any authority for the proposition that it is entitled to treat the separate WC/EL Policy and CGL Policy as if they were, in effect, a single policy. At any rate, the facts of the present case are distinct from the facts presented in *Forge* and other insurance cases dealing with traditional risk-transfer policies. The CGL Policy is, by ACE's own admission, a no risk-transfer policy. Under such circumstances, shifting coverage to the CGL Policy would "completely and irreparably" relieve ACE of any financial responsibility for the expenses and damages at issue even if "coverage" exists as a purely technical matter. The Court concludes that this meets the *Forge* conflict-of-interest standard under the particular circumstances of this case. For this reason, the plaintiffs were entitled to retain independent counsel. ACE therefore cannot viably argue that the plaintiffs' payments to independent counsel constituted "voluntary payments" that relieved ACE of the duty to reimburse the plaintiffs for reasonable defense expenses.

**D.    Cooperation clause**

ACE advances a very similar argument with respect to the WC/EL Policy's cooperation clause, which states that Sun and Tribune must "cooperate with [ACE] and assist [ACE], as we may request, in the investigation, settlement or defense of any proceeding or suit." Def.'s Stmt. of Add'l Facts ¶ 4. ACE argues that the plaintiffs "deliberately precluded ACE from asserting its contractual right to direct and control their defense" in violation of the cooperation clause. Def.'s Resp. at 11.

"When an insurer asserts that a cooperation clause has been breached, the burden of proof is on the insurer to prove what constitutes that breach." *Emps. Ins. of*

*Wausau v. James McHugh Const. Co.*, 144 F.3d 1097, 1105 (7th Cir. 1998). In addition, "unless a breach of the cooperation clause substantially prejudices the insurer, the insurer cannot rely on the breach to escape its obligations under the policy." *Country Mut. Ins. Co. v. Livorsi Marine, Inc.*, 222 Ill. 2d 303, 320, 856 N.E.2d 338, 348 (2006). "Proof of substantial prejudice requires an insurer to demonstrate that it was actually hampered in its defense by the violation of the cooperation clause." *M.F.A. Mut. Ins. Co. v. Cheek*, 66 Ill. 2d 492, 499, 363 N.E.2d 809, 813 (1977).

ACE has not carried its burden. Like the voluntary payment argument, ACE's noncooperation argument centers on the plaintiffs' retention of independent counsel. As the Court has discussed, the plaintiffs were entitled to reimbursement for the reasonable expenses of independent counsel due to ACE's conflict of interest. But even assuming that the plaintiffs' conduct amounted to noncooperation, ACE has not provided any evidence that it was substantially prejudiced as a result. It is undisputed that ACE was not asked to contribute to the ultimate settlement agreement with the claimants and did not do so. To the extent that ACE argues that it was prejudiced because the plaintiffs' defense expenses were unreasonably high, the Court again notes that the duty to defend only requires the insurer to pay reasonable expenses. Because ACE has not carried its burden to show that it was substantially prejudiced, any arguable violation of the noncooperation clause does not excuse ACE's breach of its duty to defend the plaintiffs.

### E.    Unclean hands

Finally, ACE argues that the doctrine of "unclean hands" should prevent the plaintiffs from recovering from ACE. Def.'s Resp. at 13. But ACE does not explain how

the plaintiffs are "guilty of misconduct, fraud or bad faith." *Id*. (quoting *Long v. Kemper Life Ins. Co.*, 196 Ill. App. 3d 216, 219, 553 N.E.2d 439, 441 (1990)). First, ACE suggests that the plaintiffs' conduct "precluded ACE from asserting its rights under the EL coverage, such as the right to select and direct defense counsel." *Id.* But this is merely a repackaged version of ACE's argument regarding the plaintiffs' alleged voluntary payments and noncooperation. The Court disagrees with this argument for the reasons already discussed.

Second, ACE asserts that the "Other Insurance" clause of the WC/EL Policy "unequivocally provides that allocation of an equal share of defense costs to the CGL Policy is appropriate." *Id.* The Court cannot see—and ACE does not explain—how this relates to any misconduct, fraud, or bad faith by the plaintiffs. Even assuming that some split of defense expenses between the WC/EL Policy and the CGL Policy is warranted, it is undisputed that ACE did not pay even its "equal share" of those expenses. Even if ACE believes that some cost-sharing between the WC/EL Policy and CGL Policy is warranted, this is not a defense on the question presently before the Court—*i.e.*, whether ACE breached its duty to defend. ACE is therefore not entitled to excuse its breach based on the doctrine of unclean hands.

## F. Remaining issues

To summarize, the Court concludes that ACE breached its duty to defend the plaintiffs against the underlying suits by refusing to pay for or reimburse any portion of the plaintiffs' defense expenses. That does not mean, however, that this *necessarily* entitles the plaintiffs to the entirety of their claimed defense expenses as a matter of law. As the Court has explained, an insurer's duty to defend only requires it to pay for

16

*reasonable* defense expenses.  *See A. Kush & Assocs., Ltd.*, 927 F.2d at 934–35 ("Even where estopped from denying coverage and where the insurer wrongfully refused to defend, breaching its duty to the insured, the insurer is liable, at most, 'for the cost and expense which the insured was put to by the insurer's breach of the insurance contract, and this liability embraces reasonable attorneys fees.'" (quoting *Ervin v. Sears, Roebuck & Co.*, 127 Ill. App. 3d 982, 989, 469 N.E.2d 243, 248 (1984))).  In short, the amount to which the plaintiffs are entitled remains unresolved.

### Conclusion

For the reasons stated above, the Court grants the motion for summary judgment [dkt. 46, 52] in favor of the plaintiffs on count 1 of the amended complaint and finds that the defendant breached its duty to defend.  The parties are directed to promptly confer and attempt to agree upon a schedule for any remaining proceedings needed to bring the case to a conclusion.  They are to file a joint status report with a proposed schedule—or alternative proposals if they cannot agree—by February 23, 2024.  A telephonic status hearing is set for February 28, 2024 at 9:05 a.m.  The following call-in number will be used:  888-684-8852, access code 746-1053.

Date:  February 21, 2024

MATTHEW F. KENNELLY
United States District Judge

17